HARVARD LAW SCHOOL COALITION FOR CIVIL RIGHTS
& others[1] *vs.* PRESIDENT AND FELLOWS OF HARVARD
COLLEGE.

Middlesex. March 3, 1992. - July 9, 1992.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Practice, Civil*, Motion to dismiss, Standing, Parties, Amendment. *Employment*, Discrimination. *Anti-Discrimination Law*, Employee. *Consumer Protection Act*, Standing.

Students of a law school, who brought an action against the school, seeking equitable relief from allegedly discriminatory faculty hiring policies in violation of G. L. c. 151B, did not demonstrate that they were "persons aggrieved" within the meaning of § 9 of that statute, and the judge properly dismissed their claim. [68-70]

Students of a law school, who brought an action against the school seeking equitable relief from allegedly discriminatory faculty hiring policies in violation of G. L. c. 93, § 102, did not demonstrate that they had any contractual relationship with the law school that was protected by the statute, and the judge properly dismissed their claim. [70-71]

There was no error in the judge's dismissal of a civil complaint, where the amended complaint failed to state the essential elements of the plaintiffs' alleged contract that the defendant allegedly breached. [71-72]

The judge in a civil action properly denied the plaintiffs' motion to amend the complaint where the plaintiffs failed to disclose the substantive content of their amendment. [72]

CIVIL ACTION commenced in the Superior Court Department on November 20, 1990.

The case was heard by *Patrick F. Brady*, J., on a motion to dismiss.

The Supreme Judicial Court granted a request for direct appellate review.

---

[1]Twelve named members of the coalition. We acknowledge the amicus brief filed in support of the plaintiffs.

413 Mass. 66                                                67

Harvard Law School Coalition for Civil Rights *v.* President & Fellows of Harvard College.

*Caroline Witcoff*, pro se.

*Laura Hankins*, pro se.

*Allan A. Ryan, Jr.*, for the defendant.

The following submitted a joint brief for amici curiae.

*Ozell Hudson, Jr., Richard J. Yurko, Richard R. Lavin, Phyllis N. Crockett, Sharon D. Gillis & John W. Banse*, for Lawyers' Committee for Civil Rights under Law of the Boston Bar Association.

*Antonia Hernandez* of California, for Mexican-American Legal Defense & Education Fund.

*Geraldine S. Hines*, for National Conference of Black Lawyers.

*Arthur Kinoy*, for National Lawyers' Guild - Massachusetts Chapter.

*Linda Gadsby* of New York, for National Black Law Students Association - Northeast Region.

*Claire Gonzalez* of the District of Columbia, for National Council of La Raza.

*Paula Ettelbrick* of New York, for Lambda Legal Defense & Education Fund, Inc.

*Joan Gibbs* of New York, for Center for Constitutional Rights.

*Elisabeth Ryder Benjamin* of New York, for Coalition for Diversity in Legal Education/Columbia & others.

LYNCH, J. The plaintiffs, Harvard Law School Coalition for Civil Rights (coalition) and individual students from Harvard Law School, appeal from the dismissal of their first amended complaint under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), seeking equitable relief for the allegedly discriminatory faculty hiring policies of Harvard Law School (law school) in violation of G. L. c. 151B (1990 ed.) and G. L. c. 93, § 102 (1990 ed.). In dismissing the complaint, the Superior Court judge ruled that the plaintiffs lacked standing under either statute and that the coalition lacked capacity to sue. The judge also denied the plaintiffs' motion to amend the complaint to add a claim under G. L. c. 151C (1990 ed.). After judgment for the defendant, the plaintiffs

appealed. We allowed the plaintiffs' application for direct appellate review, and we now affirm.

1. *Standard of review of judgments on motions to dismiss.* In determining the appropriateness of a judgment dismissing a complaint, "we accept as true all of the allegations of the complaint and all reasonable inferences which may be drawn from the complaint and which are favorable to the party whose claims have been dismissed. . . . Further, a motion to dismiss a complaint . . . should not be allowed unless it appears certain that the complaining party is not entitled to relief under any state of facts which could be proved in support of the claim" (citations omitted). *Rae* v. *Air-Speed, Inc.*, 386 Mass. 187, 191 (1982).

2. *Standing under G. L. c. 151B.* The plaintiffs essentially allege that, because the law school has not hired certain minorities, females, and disabled persons, they have been denied the benefit of association with an integrated faculty and therefore they have standing as "persons aggrieved" under G. L. c. 151B, § 9.

The authority to bring an action for a statutory violation is determined with reference to the context, subject matter, and area of concern of the statute. *Beard Motors, Inc.* v. *Toyota Motor Distribs., Inc.*, 395 Mass. 428, 431-432 (1985). General Laws c. 151B, § 4, prohibits employers from engaging in discriminatory employment practices against certain protected classes.[2] "Chapter 151B, § 4 (1) . . . seeks the removal of artificial, arbitrary, and unnecessary barriers to full participation in the workplace." *College-Town, Div. of Interco, Inc.* v. *Massachusetts Comm'n Against Discrimination*, 400 Mass. 156, 162 (1987). Section 9 of G. L. c. 151B grants to

---

[2]General Laws c. 151B, § 4 (1) (1990 ed.), provides: "It shall be an unlawful practice: 1. For an employer, by himself or his agent, because of the race, color, religious creed, national origin, sex, sexual orientation, which shall not include persons whose sexual orientation involves minor children as the sex object, or ancestry of any individual to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification."

413 Mass. 66                                                        69

Harvard Law School Coalition for Civil Rights *v.* President & Fellows of Harvard College.

"[a]ny person claiming to be aggrieved" by such a discriminatory practice standing to bring a civil action for damages or injunctive relief or both. "[T]he central focus of inquiry is whether the employer penalizes some employees or prospective employees because of their race, color, religion, sex, or national origin." *School Comm. of Braintree* v. *Massachusetts Comm'n Against Discrimination*, 377 Mass. 424, 428 (1979). "Although the Commonwealth's employment discrimination law, G. L. c. 151B, affects 'a broad array of employment practices' . . . we will not assume that the Legislature intended to cover relationships outside the traditional common law employer-employee relationship." *Comey* v. *Hill*, 387 Mass. 11, 15 (1982). "To qualify as a 'person aggrieved,' a person must allege substantial injury as the direct result of the action complained of." *Massachusetts Elec. Co.* v. *Massachusetts Comm'n Against Discrimination*, 375 Mass. 160, 177-178 (1978). It is clear from the statute and case law that an individual has to be within the employment relationship and has to have suffered injury as a result of a prohibited practice in order to have a cause of action under § 9. On analysis we determine that the plaintiffs are not within the employer-employee relationship and have not alleged substantial injury within the area of concern of the statute.[3]

---

[3]Our conclusion is buttressed by the cases interpreting the analogous Federal statute, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. (1988), which we have looked to as an aid in interpreting G. L. c. 151B. Contrary to the plaintiffs' contention, there is no support in the case law interpreting Title VII for extending the reach of the employment discrimination concerns of c. 151B to individuals outside of the employment relationship, such as the plaintiffs in this case. Rather, there is considerable support for limiting Title VII's area of concern to the employer-employee relationship. See *Wheeler* v. *Hurdman*, 825 F.2d 257, 275-276 (10th Cir.), cert. denied, 484 U.S. 986 (1987) (statutory redress under Title VII available only to those in employment relationship); *Cobb* v. *Sun Papers, Inc.*, 673 F.2d 337, 340-341 (11th Cir.) (term "employee" given common law definition), cert. denied, 459 U.S. 874 (1982); *Spirides* v. *Reinhardt*, 613 F.2d 826, 829-830 (D.C. Cir. 1979); *Tadros* v. *Coleman*, 717 F. Supp. 996, 1002 (S.D.N.Y. 1989) ("Title VII is an *employment* law, available only to employees [or prospective employees] seeking redress for unlawful employment practices of their employers"), aff'd in

The plaintiffs were neither employees nor applicants for employment at the law school. They have not claimed the law school denied or discharged them from employment, or discriminated in compensation, terms, conditions or privileges of their employment. Likewise, the injuries they complain of — denial of "perspectives," "life experiences," and "access to . . . role models" — are not within the area of concern of the statute. Since the plaintiffs are not "persons" within the employment relationship, they are not "[a]ny person claiming to be aggrieved" as the term is used in the statute. Consequently, they have no standing under G. L. c. 151B.

3. *Standing under G. L. c. 93, § 102.* The judge ruled that G. L. c. 93, § 102, does not confer standing on anyone other than those whose rights have been violated. The plaintiffs argue that, as tuition-paying students, they have a contractual relationship with the law school protected by G. L. c. 93, § 102. General Laws c. 93, § 102, guarantees that "[a]ll persons within the Commonwealth, regardless of sex, race, color, creed or national origin, shall have . . . the same rights enjoyed by white male citizens, to make and enforce contracts . . . ." The plaintiffs' amended complaint failed to allege that the plaintiffs had a contract with the law school in which the law school agreed not to discriminate in faculty hiring or agreed to hire valuable role models of diverse backgrounds. The only hint of any contract or agreement in the entire complaint is the allegation that the plaintiffs "as students . . . are the intended beneficiaries of the agreement to employ individuals as law teachers at their school." Moreover, the plaintiffs did not allege that the law school discriminates against them on the basis of race, gender, or sexual orientation, in providing contractual benefits to them. Rather, the plaintiffs contend that the law school's alleged failure to hire a diverse faculty injures *all* students. Such an

---

relevant part, 898 F.2d 10, 11 .(2d Cir.), cert. denied, 111 S. Ct. 186 (1990).

Also, the cases the plaintiffs cite dealing with the "injury in fact" requirement for standing under art. 3 of the United States Constitution have no bearing on determining standing under G. L. c. 151B.

allegation can hardly amount to "discrimination in the enforcement" of the plaintiffs' contracts with the law school or a denial of the same contractual benefits enjoyed by white male students.

The plaintiffs' contention that they are the intended beneficiaries of the employment contracts between the law school and its faculty is also flawed. The plaintiffs are no more than incidental beneficiaries of these contracts. *Rae* v. *Air-Speed, Inc.*, 386 Mass. 187, 194-195 (1982). See Restatement (Second) of Contracts § 302 (1981); 4 A. Corbin, Contracts § 779C (1951 & Supp. 1991); 2 S. Williston, Contracts §§ 402, 403 (3d ed. 1959). Under Massachusetts law, only intended beneficiaries, not incidental beneficiaries, can enforce a contract. *Rae* v. *Air-Speed, Inc., supra* at 195-196. See *Plymouth Hous. Auth.* v. *Plymouth*, 401 Mass. 503, 505 (1988).

4. *Breach of implied contract claim.* The plaintiffs contend for the first time on appeal that dismissal of their complaint was erroneous because their complaint implicitly stated a claim that the law school breached a contract with them.

"[A] plaintiff can withstand a motion to dismiss if he has alleged facts that entitle him to any form of relief, even if he has not alleged the correct legal theory in his complaint." *Independence Park, Inc.* v. *Board of Health of Barnstable*, 403 Mass. 477, 482 (1988). See *Nader* v. *Citron*, 372 Mass. 96, 104 (1977). The lengthy and detailed amended complaint deals with the plaintiffs' alleged standing under G. L. c. 151B, and G. L. c. 93, § 102. Nowhere in the complaint, however, is there any allegation of such a contract or facts from which the judge could have inferred the terms of such a contract. Neither is there any allegation of a breach of contract nor facts alleged that would establish one. On appeal, the plaintiffs again do not set out the provisions of the contract, nor what terms they rely on in their contractual relationship as students with the law school. Instead, they make allegations of "[c]atalogue" and "literature" without identifying those sources other than the defendant's affirmative action plan. Furthermore, at oral argument on the motion to dismiss, the plaintiffs referred to their educational contracts

with the law school, not to allege a breach of contract, but to advance their argument that they had standing under the "make and enforce contracts" language under G. L. c. 93, § 102. These allegations are not sufficient to support the plaintiffs' contention that there was a breach of their "contract" with the law school. Clearly, the amended complaint failed to state the essential elements of the plaintiffs' alleged contract. See *Independence Park, Inc.* v. *Board of Health of Barnstable, supra.*

5. *G. L. c. 151C claim.* The plaintiffs argue that the judge abused his discretion in not allowing them to amend their complaint to include a claim under G. L. c. 151C.

General Laws c. 151C, § 2 (*d*), states: "It shall be an unfair educational practice for an educational institution . . . [t]o . . . discriminate against any student . . . in providing benefits, privileges and placement services." Initially, the plaintiffs neither sought relief nor argued any theory under G. L. c. 151C. Although leave to amend a complaint shall be "freely given when justice so requires," Mass. R. Civ. P. 15 (a), 365 Mass. 761 (1974), the decision to grant such a motion lies within the broad discretion of the trial judge. *Murphy* v. *I.S.K.Con. of New England, Inc.,* 409 Mass. 842, 864 (1991). The judge denied the plaintiffs' motion to amend their complaint because they failed to disclose the substantive content of their desired amendment. The plaintiffs filed a postjudgment motion for reconsideration, which the judge denied. In these circumstances it was not an abuse of discretion for the judge to deny the motion to amend. See *Goulet* v. *Whitin Mach. Works, Inc.,* 399 Mass. 547, 549-550 (1987); *Jessie* v. *Boynton,* 372 Mass. 293, 295 (1977).

Because we affirm the judgment on other grounds, we need not reach the question of capacity of the plaintiffs to sue. But see *DiLuzio* v. *United Elec., Radio & Mach. Workers, Local 274,* 386 Mass. 314, 319 n.6 (1982).

For the reasons stated we conclude that the judge properly dismissed the plaintiffs' complaint.

*Judgment affirmed.*