Cowin, J.
This action arises from the employment and termination of plaintiff Christine Dietz (“Dietz”) by defendant Bytex Corporation (“Bytex”). The counts that are the subject of this motion[2] allege various statutory and common law claims against the defendants, including but not limited to sexual discrimination under G.L.c. 151B, defamation, interference with contractual relations and infliction of emotional distress. Defendants have moved for summary judgment on all counts. For the following reasons, defendants’ motion is allowed in part and denied in part.
BACKGROUND
The Court treats the following facts drawn from the verified pleadings, depositions, affidavits and answers to interrogatories as true for the purposes of this summary judgment motion. Conclusory statements, factual allegations not based upon personal knowledge, general denials, conclusions of law and statements which would be inadmissible in evidence have been disregarded. Key Capital Corp. v. M&S Liquidating, 27 Mass.App.Ct. 721, 727-28 (1989), rev. den, 406 Mass 1101.
Dietz was employed by Bytex as a software engineer from on or about January 8, 1990 until December 2, 1991. During this time, the individual defendants were employed by Bytex in the following positions: Peter Seymour (“Seymour”) and Mary Freeman (“Freeman”) were Dietz’s supervisors; Michael Mancusi (“Mancusi”) was the manager of Seymour and Freeman; and Mary Chamley (“Chamley”) was the human services ombudsperson for Bytex.
In Dietz’s first two performance reviews (January-June 1990 and July-December 1990), she received no less than a “3” (fully satisfactory) out of a possible rating of “5” (outstanding). During that time, Dietz worked on various projects.
In January of 1991, Dietz was assigned to the Lynx/Maestro project, an operation which was divided into two phases. Ben McLeod (“McLeod”), another engineer, was assigned to lead the hardware development phase (“R-0”) while Dietz was assigned to lead the software and testing phase (“R-1”). The Lynx/Maestro project was understaffed, and the employees working on the project had to put in a considerable amount of overtime in order to complete the tasks expected of them. Seymour determined Dietz’s goals and objectives on the Lynx project. These goals and objectives were the basis for her performance evaluation rating and they did not take into consideration the number of hours required to fulfill a certain goal.
Soon after beginning work on the Lynx project, Dietz was assigned to help McLeod on the R-0 phase. Dietz asked another software engineer Sonia Trinid-ade (“Trinidade”) to clarify some R-1 technical matters. Word of Dietz’s questions got back to Freeman, who in turn told Seymour that Dietz was “not up to snuff’ on the project. Dietz confronted Trinidade about the incident. Freeman and Seymour ultimately characterized the incident as one arising from miscommunication.
Dietz was assigned several major project tasks in addition to her R-1 duties and her assignment helping McLeod with R-0 duties. She repeatedly asked for people to be assigned to her to help with these tasks, but she was not given any help.
During this period, Dietz taught herself both Token Ring technology and Novell Netware software system on her own time. She purchased the course materials herself. Technical expertise in both systems was helpful to Dietz in her position as software engineer. She also taught McLeod about Novell Netware during work hours. Although other engineers, including McLeod, may have received bonuses for extra work, Dietz did not.
Around this same time, Dietz experienced stress, high blood pressure, anxiefy and a miscarriage. Dietz never informed anyone at Bytex of her pregnancy or miscarriage.
In July 1991, Seymour gave Dietz her six-month performance review for January-June 1991. Before the review was given to Dietz, the managers had a meeting, attended by Mancusi, during which each of them discussed the performance of each employee, including Dietz. Although Dietz’s review included some ratings of “3” and “4,” her overall rating was a “2” (“needs improvement”). The overall performance rating of “2” does not mathematically correlate with the ratings given Dietz for individual performance categories and their weighted percentage of the overall performance rating.[3] Dietz wrote several rebuttals to *42 the January-June 1991 performance review and ultimately refused to sign it.
When Dietz received a list of the goals and objectives that would be the basis of her next performance review, Dietz requested that Seymour calculate and put in writing the number of hours per week it would take her to meet those goals. Seymour refused, but acknowledged that it would exceed 40 hours per week. Dietz then met with Seymour and Charnley, the Bytex Ombudsperson, who told Dietz that if she could not meet the goals written by Seymour she could be fired.
In November 1991, Seymour wrote a memo to Dietz, outlining her responsibilities on the Lynx project and assigning her additional duties on a project nicknamed Piccolo. These included writing a fully functional one-phase test program. Other people assigned to the Piccolo project were working on a two-phase test program and apparently were unaware that Dietz was assigned to write a one-phase test program. Dietz distributed copies of Seymour’s memo to the other members of the Piccolo team. Seymour met with Dietz and told her that the memo was a private communication, and that she was not to distribute private memos to others in the company. Dietz interpreted this instruction as a request that she lie to her coworkers. About a week later, Dietz circulated another Seymour memo, after which Seymour issued a formal performance warning to Dietz.
On November 27, 1991, Dietz, Seymour and Charnley met to discuss the performance warning. Dietz requested permission to tape-record the meeting. When Charnley refused, Dietz left the meeting. Charnley then followed Dietz and, at the very least, touched Dietz’s elbow while attempting to speak to her. Dietz left work early that day. Dietz was terminated on December 2, 1991. Two people were hired for Dietz’s department after she was terminated, at least one of whom was a direct replacement for Dietz’s position. Dietz timely filed sex discrimination charges with the Massachusetts Commission Against Discrimination (“MCAD”) on April 30, 1992. She received a “right to sue” letter from the MCAD on July 2, 1992.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party bears the burden of demonstrating affirmatively that there is no triable issue and that the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14 (1989).
Sexual Discrimination
The first two counts of Dietz’s complaint allege sexual discrimination in violation of G.L.c. 151B against Bytex and all the individual defendants.[4] The defendants assert that they are entitled to summary judgment. They claim that Dietz cannot meet her initial burden of establishing a prima facie case of unlawful discrimination under c. 151B and that, even if plaintiff meets that burden, she cannot show that defendant’s stated reason for her termination was pretextual. Brunner v. Stone & Webster Engineering Corp., 413 Mass. 698, 700 (1992). In order to establish a prima facie case of gender discrimination resulting in termination, Dietz must prove four elements: (1) Dietz is a member of a protected class; (2) Dietz was terminated; (3) Bytex sought a replacement with similar qualifications; and (4) Dietz performed the job at an acceptable level. White v. University of Massachusetts, 410 Mass. 553, 557 (1991).
As a female, Dietz is a member of a protected class. Northeast Metropolitan Regional Vocational School District School Committee v. MCAD, 31 Mass.App.Ct. 84, 86 (1991). There is evidence that Dietz was terminated, and that she was replaced by someone with similar qualifications. Finally, in spite of her overall “2” rating on her Januaiy-June 1991 evaluation, a jury could infer from Dietz’s ratings of “3” and “4” in several categories that she performed her job at an acceptable level. Thus, Dietz has established a prima facie case of discrimination.
Once Dietz has established a prima facie case, Bytex must — if it is to prevail — produce evidence that the complained-of job action was taken for nondiscriminatory reasons. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Here, Bytex has met this “burden of production” by maintaining that Dietz was fired for insubordination (distributing the “confidential” memos) and refusal to accept direction from management. Since Bytex has presented evidence that termination of the plaintiff was for a lawful reason, the burden of production shifts back to Dietz to show that Bytex’s reasons were pretextual. Brunner, supra at 700.
In this regard, Dietz offers evidence that she was not given sufficient help to complete her assignments while her male counterpart, McLeod, was; that she was asked to lie to co-workers while male employees were not; and that there were conflicting reasons given by Mancusi and Seymour for her termination. This Court cannot say as a matter of law that Dietz will be unable to prove at trial that Bytex’s proffered reasons for its actions are pretextual. Therefore, the defendants’ motion for summary judgment on Counts I and II of Dietz’s complaint is denied.[5]
Defamation
In Count III Dietz alleges defamation against defendants Seymour and Freeman. This claim is based upon their statements criticizing Dietz’s job performance on the Lynx project and on Seymour’s performance warning to Dietz. These statements were merely the opinions of supervisors about Dietz’s job *43 performance and qualifications for her job. Subjective assessments of an employee’s job performance made by managers do not give rise to any actionable defamation claim. Judd v. McCormack, 27 Mass.App.Ct. 167, 175 (1989). Therefore, summary judgment is allowed on Count III.
Termination in Violation of Public Policy
In Count IV, Dietz alleges against Bytex termination in violation of public policy. In order to prove her claim under this count, Dietz must be able to point to a clearly-defined public policy (other than that implicated under Counts I and II) which is threatened by her termination. Here, Dietz claims that she was fired because she refused to lie to her co-workers. Even if this is true, it does not constitute an actionable claim for violation of public policy in Massachusetts. Actionable claims include situations in which the termination results from an effort to compel an employee to violate the law; is in retaliation against an employee exercising a guaranteed right against the employer; or is the result of the employee performing important public services such as cooperating with a government investigation. See Smith-Pfeffer v. Superintendent of the Fernald School, 404 Mass. 145 (1989); DeRose v. Putnam Management Co., 398 Mass. 205, 210 (1987); and Mistishen v. Falcone Piano Company, Inc., 36 Mass.App. 243, 246 (1994). Summary judgment is therefore allowed on Count IV of Dietz’s complaint.
Intentional Interference With Contractual Relations
In Count VI, Dietz alleges intentional interference with contractual relations against all the individual defendants. In order to succeed on this claim, Dietz must prove that: (1) she had a contract [or business relationship] with Bytex; (2) the defendants knowingly induced Bytex to break the contract; (3) the interference of the defendants was intentional and improper in motive or means; and (4) she was harmed. G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 272 (1991).
“Improper” in this context has been defined as conduct that is wrongful beyond the fact of interference itself. It may arise from improper motives or from the use of improper means. United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 816 (1990). In this case, the wrongful behavior which Dietz alleges in her sexual discrimination claim against these same defendants may also support her claim of intentional interference with contractual or business relations. On such evidence, a jury could find that the defendants wrongfully interfered with Dietz’s business relationship with Bytex. For that reason, defendants are not entitled to summary judgment on Count VI.
Assault and Battery
In Count VIII, Dietz alleges assault and battery against Charnley. Dietz alleges that Chamley touched or grabbed Dietz’s arm to get her attention after Dietz left the November 27, 1991 meeting. Even if the allegation is true, a cause of action does not lie against Charnley for assault and battery. Charnley’s actions clearly arose out of her employment as the om-budsperson at Bytex. The Workers’ Compensation Act is the exclusive remedy for injuries arising out of the course of employment unless the employee gives the employer written notice that he or she is preserving rights at common law.[6] Anzalone v. Massachusetts Bay Transp. Authority, 403 Mass. 119, 124 (1988). Dietz did not provide Bytex with any such notice. Summary judgment is therefore allowed on Count VIII.
Infliction of Emotional Distress
Dietz alleges in Counts IX and X negligent and intentional infliction of emotional distress against all defendants. However, as discussed above, the Workers’ Compensation Act is the exclusive remedy for injuries arising out of the course of employment, including injuries arising from the negligent or intentional torts of fellow employees. Anzalone, supra at 124. As the actions alleged by Dietz arose out of the defendants’ employment by Bytex, Dietz’s emotional distress claims are barred by the exclusivity provision of c. 152, §24. (As noted previously, she did not preserve her common law rights pursuant to this statute.) Summary judgment is therefore allowed on Counts IX and X of Dietz’s complaint.
G.L.c. 93A
In Count XIII, Dietz alleges a violation of c. 93A against Bytex. Chapter 93A does not apply to the employer-employee relationship. Manning v. Zuckerman, 388 Mass. 8, 10-13 (1983). Dietz seeks to overcome this stricture by alleging that the unfair practices occurred during the hiring process, not the employment relationship. She alleges that in her preemployment interview, she was deceived about the nature of performance evaluations and the amount of hours she would be expected to work. However, even were c. 93A to be applicable (a proposition which is by no means clear), Dietz presents no evidence to support these alleged misrepresentations. Summary judgment is therefore allowed on Count XIII.
ORDER
It is hereby ORDERED that summary judgment is ALLOWED as to Counts III, IV, VIII, IX, X and XIII. Summary judgment is DENIED as to Counts I, II and VI.

 Counts V, VII, XII and XTV were dismissed by this Court (Houston, J.) on October 5, 1993. Count XI has been stricken for plaintiffs failure to amend the complaint.

 The following is a summary of Dietz’s January-June 1991 performance rating:
*44 weighted percentage category
25 Test Plan Creation
Problem Reporting & Follow-Up W r-H CO
Problem Solving W ^
Time Management O Ci
Education O CO
Test Execution lO i-H
Thus, Dietz’s rating of “2” should have comprised a total of 45% of her overall rating; her rating of “3” should have comprised a total of 25% of her overall rating; and her rating of “4” should have comprised a total of 30% of her overall rating. Given the weighted percentages above, it is unclear how Dietz’s final overall rating emerged a “2” rather than a “3."

 Dietz pleaded her discrimination claim in two separate counts: one for sexual discrimination and the second for aiding and abetting sex discrimination. Since both counts state claims under G.L.c. 151B, they will be considered together.

 In addition, the individual defendants claim that they are entitled to summary judgment because an employee cannot be sued under G.L.c. 151B. This argument mischaracterizes the holdings of Harvard Law School Coalition for Civil Rights v. Pres. and Fellows of Harvard College, 413 Mass. 66 (1992), and College-Town, Division of Interco v. MCAD, 400 Mass. 156 (1987). Both Harvard and College-Town simply stand for the proposition that under certain circumstances employers can be held vicariously liable for the discriminatory acts of their employees. Neither case stands for the converse, i.e., that employers are exclusively liable.

 G.L.c. 152, §24 provides, in pertinent part:
An employee shall be held to have waived his right of action at common law or under the law of any other jurisdiction in respect to an injury that is compensable under this chapter, to recover damages for personal injuries, if he shall not have given his employer at the time of this contract of hire, written notice that he claimed such right. . .