Dr. Ron DUSHKIN, Mary Ellen Stout, David Milam, Jordan Blank, Nina Segal, Dr. Jeff Migdow, Michael Penny, Deva Parnell, Alex Monroe, Noel Abbott, Russell Poole, Anna Poole, Meg Connor and Thomas Amelio, Plaintiffs,

v.

Amrit DESAI, Defendant.

Civil Action No. 97–30143–MAP.

United States District Court, D. Massachusetts.

Aug. 27, 1998.

118

John Traficonte, Boston, MA, for Plaintiffs.

Diane E. DeGiacomo, Cain, Hibbard, Myers & Cook, Pittsfield, MA, for Defendant.

*MEMORANDUM REGARDING DEFENDANT'S MOTION TO DISMISS*

PONSOR, District Judge.

## I. INTRODUCTION

Fourteen former "disciples" of self-proclaimed yoga guru Amrit Desai have brought

this suit against their former leader for losses suffered when Desai was (according to their allegations) revealed to be a charlatan.

Plaintiffs resided and labored for many years at the Kripalu Ashram, a yoga retreat center in Lenox, Massachusetts, where Desai, the plaintiffs' revered spiritual leader, presented himself as a "true and authentic guru." Compl. ¶ 62. Plaintiffs devoted themselves to emulating Desai, who promoted a celibate and ascetic lifestyle to which he himself outwardly proclaimed to adhere.

Plaintiffs now bring myriad tort, contract, and unfair trade practice claims against defendant, seeking to recover damages for the emotional distress, mental anguish, and other losses sustained by them when defendant was exposed as a fraud. Defendant has moved to dismiss the suit in its entirety.

For the reasons stated below, the court will allow defendant's motion in part and deny it in part.

## II. FACTS

In reviewing defendant's Motion to Dismiss, the court will accept all well-pleaded factual allegations as true, and draw all reasonable inferences in favor of the plaintiffs. *Carparts Distrib. Ctr. v. Automotive Wholesaler's Ass'n,* 37 F.3d 12, 14 (1st Cir.1994). The motion may be granted only if there is no set of facts or theory, consistent with the allegations, upon which the plaintiff can recover. *Chapin v. University of Massachusetts,* 977 F.Supp. 72, 75 (D.Mass.1997).

Plaintiffs' complaint alleges the following facts.

After coming to the United States in the 1960s to study at the Philadelphia College of Art, defendant Amrit Desai formed the Kripalu Yoga Ashram, a small intentional living community, sometime in 1974. Desai appointed himself as the Kripalu Ashram's "guru," or spiritual leader. The ashram included approximately twenty resident members and operated a small public center for the purpose of teaching yoga. In the late 1970s, Desai's ashram became a Pennsylvania nonprofit charitable corporation called the Kripalu Yoga Fellowship ("KYF").

In 1983, KYF moved to a 350–acre site in Lenox, Massachusetts. KYF began to operate a large-scale retreat center for holistic health and education at the Lenox site, which contained several large facilities that housed up to 500 people. Over 15,000 paying guests per year visited KYF "to relax, take yoga classes, meditate, have massages, and otherwise take a break from the routine of their daily lives." Compl. ¶ 20. Approximately 250 resident members of the ashram (including the plaintiffs) operated the facility, working for room and board and a small monthly stipend in exchange for the opportunity to live at the Kripalu Ashram as Desai's "disciples."

Plaintiffs allege that the resident members, paying guests, and KYF donors were attracted to the facility precisely because of Desai's presence. Desai's picture hung throughout the facilities, his videos ran continuously in the public areas, and his books, tapes, and other items were offered for sale by KYF.

Publicly, Desai claimed to be an authentic guru—a "teacher and object of veneration" who attains his status in part through several forms of abstinence, including refraining from sexual activity and material pursuits. *See* Pls.' Opp'n at 3. Desai outwardly professed to live the proper life of an authentic guru, which he identified as demanding "honesty, selfless devotion to the well-being of his followers," and "absolute personal trust" between guru and followers, in addition to celibacy and commitment to a non-material, physically and financially simple lifestyle. *See* Compl. ¶ 24. As resident guru at KYF, he conducted a combination of life counseling, spiritual leadership, and health and educational services. *See* Compl. 23.

Plaintiffs characterize Desai as cultivating in his followers an intense emotional dependence. The plaintiffs, as "disciples," were told to identify themselves and their well-being with Desai's personality and integrity, and to regard Desai as the most important person in their lives. Desai deemed himself the plaintiffs' "personal life counselor," Compl. ¶ 29, and frequently offered guidance with respect to the most intimate aspects of the plaintiffs' personal lives. *Id.* Plaintiffs

state that over many years, each of them developed a "close and deeply personal relationship" with Desai. *Id.* ¶ 31.

Plaintiffs claim that during their years at the ashram they strove to emulate Desai's professed lifestyle, in that they endeavored to be celibate or chaste, honest, selfless, and devoted to the well-being of others, within the framework of a simple, non-material way of life. In addition, on numerous occasions, Desai allegedly urged the plaintiffs to donate literally all of their possessions to KYF. One plaintiff claims to have donated more than $30,000, and another more than $100,000 in earnings to KYF upon Desai's instruction.

Behind his carefully cultivated image, plaintiffs charge, Desai was in fact a fraud. Plaintiffs' complaint alleges that, from the 1970s until 1994, KYF entered into a series of lucrative contractual relationships with Desai, the purpose of which was "to induce Desai to remain physically present at KYF, teaching yoga courses, meeting with guests and visitors, serving as advisor, mentor and exemplar to the residents," Compl. ¶ 25, and performing the role of guru at KYF.[1] In exchange, Desai, as an independent contractor, received an annual fee, free housing, free transportation (both domestic and international), a percentage of the proceeds from literature, video, and audiotape sales, and free sponsorship of Desai's seminars throughout the world, all revenue from which he retained. Plaintiffs aver that Desai secretly received payments and benefits from KYF totaling many hundreds of thousands of dollars.

Moreover, between 1974 and 1994, Desai engaged in a series of secret sexual relationships with several female "disciples" in the KYF community (none of whom is a party to this litigation). Plaintiffs assert that these relationships, like his material self-enrichment, were deliberately concealed by Desai in order to preserve his reputation as a true

and authentic guru. In 1985, a woman apparently revealed to KYF officers and directors that Desai had had abusive sexual relations with her. Desai accused the woman of deceit and mental illness, and "prevailed on KYF and its residents and members, including each of the plaintiffs, to ostracize, expel, or otherwise usher her out of the KYF community." Compl. ¶ 47. In 1994, another woman brought similar accusations against Desai, at which time he publicly admitted to some past sexual activities. In an audiotaped statement, Desai apologized for his behavior and acknowledged that it had caused his disciples much emotional pain and suffering. KYF ended its contractual relationship with Desai, who moved to Florida. The Kripalu Ashram still operates in Lenox, Massachusetts, but without any connection to Desai.

Plaintiffs have brought a five-count complaint against Desai, including claims for intentional infliction of emotional distress; breach of fiduciary duty; breach of contract on a third party beneficiary theory of recovery; fraud and misrepresentation; and unfair and deceptive trade practices in violation of Mass.Gen.Laws ch. 93A. For the reasons set forth below, the court will deny the motion with respect to the fraud claim and the statutory claim for unfair trade practices. The other counts, which will be addressed first, are unsupportable as a matter of law and will be dismissed.

## III. DISCUSSION

### A. Intentional Infliction of Emotional Distress

■ Count Three of plaintiffs' complaint alleges that Desai intentionally inflicted emotional distress on the plaintiffs by representing himself as a true and authentic guru, yet engaging in clandestine, abusive sexual activities with members of his own ashram, lying

---

1. Plaintiffs also allege that in 1985 Desai formed a solely-owned for-profit Pennsylvania corporation called Yoga Services, Inc. ("YSI"), with Desai as the sole shareholder, employee and officer. Plaintiffs allege that YSI then entered contractual relationships with KYF. Plaintiffs later moved to amend their complaint to add YSI as a party, *see* Docket No. 10, which would have defeated this court's diversity jurisdiction. However, upon receiving assurances from defendant's counsel that YSI has no assets, plaintiffs withdrew their Motion to Amend, and YSI never became a party to this action. Thus, the only purported contractual relationship at issue in this case is between Desai and KYF.

about his celibacy, and driving out of the KYF community one of his female accusers. Plaintiffs claim to have suffered emotional distress and mental anguish as a result of defendant's actions.

■ The Massachusetts Supreme Judicial Court established the now-familiar elements of a claim for intentional infliction of emotional distress in *Agis v. Howard Johnson Co.*, 371 Mass. 140, 355 N.E.2d 315 (1976). The plaintiff must show: 1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress would result from his conduct; 2) that the conduct was extreme and outrageous, beyond all bounds of decency and utterly intolerable in a civilized community; 3) that the defendant's conduct caused the plaintiff's distress; and 4) that the plaintiff's emotional distress was severe. *Id.* at 144–45, 355 N.E.2d 315; *Haddad v. Gonzalez*, 410 Mass. 855, 871, 576 N.E.2d 658 (1991).

Plaintiffs' claim founders on the second element of the *Agis* test; the allegations simply do not set forth sufficiently "extreme and outrageous" conduct to state a claim for intentional infliction of emotional distress.

Plaintiffs concede that promiscuity and brazen lies about one's chastity may not amount to "extreme and outrageous" conduct in all settings. Instead, plaintiffs underscore the unique context of the KYF community, and argue that the defendant's behavior "flouted precisely the values and aspirations devotion to which drew members into an extraordinary degree of emotional commitment, dependence, and vulnerability." Pls.' Opp'n at 14. Plaintiffs also stress that a position of power or authority by the perpetrator over the victim may render a course of conduct extreme and outrageous. *See* Restatement (Second) of Torts § 46, cmt. e. Plaintiffs analogize the defendant's conduct to the misbehavior of a group therapist who surreptitiously sleeps with members of the group. Pls.' Opp'n at 14–15.

While acknowledging the exceptional environment in which these acts took place, the court must note that this case does not present any actual victims of the defendant's sexual advances who allege to have been lured or pressured into an unwanted liaison. Rather, the plaintiffs' claim of emotional distress stems from the shock and disillusionment they suffered when it was discovered that their leader had engaged in sexual relations with *other* members of the ashram. Plaintiffs' argument that the defendant's extraordinary influence over the plaintiffs rendered the abuse of his authority "extreme and outrageous" carries lesser weight where, as here, the conduct triggering the emotional distress is aimed not directly at the plaintiffs but at unrelated third parties.

While the court in no way condones the alleged sham perpetrated on the plaintiffs by their guru, and acknowledges the mental anguish plaintiffs claim to have suffered as a result, the defendant's conduct—vis-à-vis *these* particular plaintiffs—falls short of the "extreme and outrageous" level of behavior necessary to sustain a claim for intentional infliction of emotional distress.[2] For this reason, defendant's motion will be allowed with respect to Count Three.

### B. Breach of Fiduciary Duty

■ Plaintiffs allege in Count Four of their complaint that the defendant, through his actions, breached a fiduciary duty owed the plaintiffs. Plaintiffs assert that defendant's fiduciary duty to deal "honestly and openly" arose from the special relationship he fostered with plaintiffs over numerous years as their guru and spiritual counselor.

■ It is well established that a fiduciary duty arises when one reposes faith, confidence, and trust in another's judgment and advice. *Van Brode Group, Inc. v. Bowditch & Dewey*, 36 Mass.App.Ct. 509, 516, 633 N.E.2d 424 (internal quotations omitted), *further appellate review denied*, 418 Mass. 1105, 639 N.E.2d 1081 (1994). However, plaintiffs cite no Massachusetts cases, nor is the court aware of any, that recognize a fiduciary duty in the spiritual counseling context. It is true that some jurisdictions have acknowledged

---

**2.** Because plaintiffs' intentional infliction of emotional distress claim fails on this ground, the court need not address whether plaintiffs have satisfied the remaining requirements of the *Agis* test.

such a duty. *See Martinelli v. Bridgeport Roman Catholic Diocesan Corp.*, 10 F.Supp.2d 138, 1998 WL 338213 (D.Conn. 1998) (recognizing fiduciary relationship under Connecticut law between parishioner and Diocese, where parishioner had been sexually abused by Diocesan priest); *DeStefano v. Grabrian*, 763 P.2d 275, 284 (Colo.1988) (finding fiduciary relationship under Colorado law between parishioner and clergyman, where priest engaged in sexual relations with parishioner who had consulted priest for marriage counseling). Other jurisdictions at least recognize the potential existence of a fiduciary relationship in this context. *See Sanders v. Casa View Baptist Church*, 898 F.Supp. 1169, 1176–77 (N.D.Tex.1995) (denying summary judgment because issues of material fact existed as to whether Baptist minister, in role of marriage counselor, owed fiduciary duty to plaintiffs) *aff'd*, 134 F.3d 331 (1998); *Davis v. Church of Jesus Christ of Latter Day Saints*, 258 Mont. 286, 852 P.2d 640, 646 (Mont.1993) (affirming denial of summary judgment on breach of fiduciary duty claim by plaintiff against Mormon Church because questions of fact remained regarding special nature of plaintiff's relationship with Church). However, this court declines to expand Massachusetts doctrine to encompass a fiduciary duty owed persons by their spiritual or religious advisors based on the spiritual nature of the relationship alone. A federal court, sitting in diversity jurisdiction, and only predicting the direction of state law, should not "blaze new and unprecedented jurisprudential trails" to expand existing state doctrine. *See Kotler v. American Tobacco Co.*, 926 F.2d 1217, 1224 (1st Cir.1990). Because the court finds that, under existing Massachusetts law, defendant owed no fiduciary duty to the plaintiffs, defendant's motion will be allowed with respect to Count Four.

## C. Breach of Contract: Third Party Beneficiaries

Count Five of plaintiffs' complaint alleges that KYF contracted with Desai for his services and that the plaintiffs, as resident members of KYF, were the intended beneficiaries of such contracts. According to plaintiffs, Desai breached his service contracts when he engaged in clandestine and abusive sexual relationships with members of the ashram and continued to misrepresent his status as a "true and authentic guru."

■ In order to recover as third-party beneficiaries, the plaintiffs must show that they were intended beneficiaries of a contract between the defendant and KYF. *See Spinner v. Nutt*, 417 Mass. 549, 555, 631 N.E.2d 542 (1994) (citing *Rae v. Air–Speed, Inc.*, 386 Mass. 187, 435 N.E.2d 628 (1982)). Only intended beneficiaries, not incidental beneficiaries, can enforce a contract. *Harvard Law School Coalition for Civil Rights v. President & Fellows of Harvard College*, 413 Mass. 66, 71, 595 N.E.2d 316 (1992). A party is an intended beneficiary "if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties," and the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance. *See* Restatement (Second) of Contracts § 302(1)(b); *Flattery v. Gregory*, 397 Mass. 143, 148–49, 489 N.E.2d 1257 (1986). A court must look to the language and circumstances of the contract for indicia of such intention. *Anderson v. Fox Hill Village Homeowners Corp.*, 424 Mass. 365, 366, 676 N.E.2d 821 (1997).

At this pre-discovery stage in the litigation, plaintiffs are not in possession of the contracts in question and are therefore unable to aver their precise terms; however, plaintiffs have alleged sufficient facts to state a claim that Desai, for valuable consideration, contracted with KYF to provide services to the members and residents of KYF. *See Rae v. Air–Speed*, 386 Mass. 187, 195, 435 N.E.2d 628 (1982). Construing plaintiffs' allegations generously, the terms of those contracts required Desai to remain physically present at the Kripalu, teach yoga courses, meet with guests and visitors, and serve as advisor, mentor and exemplar to the residents, in addition to administering guru counseling services to his followers. *See* Compl. ¶ 25.

Assuming these to be the terms of the contracts, plaintiffs, as direct recipients of Desai's contracted services, were intended beneficiaries of his agreement with KYF, and

therefore may maintain an action for breach of contract. *See St. Charles v. Kender*, 38 Mass.App.Ct. 155, 157, 646 N.E.2d 411, (finding patient to be third-party beneficiary of contract between HMO and physician such that patient could maintain action for breach of contract against physician for physician's failure to provide medical services) *further appellate review denied*, 420 Mass. 1102, 648 N.E.2d 1286 (1995).[3]

■ The conclusion that plaintiffs may maintain this action as third party beneficiaries, however, does not end the discussion, because the facts as alleged by the plaintiffs simply fail to set out a proper claim for breach of contract.

The gravamen of plaintiffs' complaint is that by secretly reaping substantial monetary compensation and having clandestine sexual relations, Desai was not providing the services of an "authentic" guru. While the court in no way makes light of Desai's behavior, plaintiffs cannot equate their disappointment in defendant's shortcomings with a cognizable claim for breach of contractual obligations.

To the extent that Desai's contractual obligation to provide "guru and spiritual counseling services" can be construed as requiring him to develop close relationships with the plaintiffs, the Complaint indicates that he satisfied that obligation. Compl. ¶ 31 ("Over many years, each of the plaintiffs developed a close and deeply personal relationship with Desai."). To the extent that defendant was expected to be a mentor and exemplar to the plaintiffs, nothing in the allegations indicates that any *contract* specifically required Desai to adhere to a particular code of conduct or abjure any specific behavior to maintain his status. Indeed, it is difficult to imagine that such terms were contemplated, considering that the liberal compensation allegedly provided for in the contracts plaintiffs seek to enforce was ap-

parently itself antithetical to the non-material lifestyle of an authentic guru. As a result, the defendant's conduct—even taking all of plaintiffs' allegations as true—does not constitute a breach of any specific or reasonably inferable terms of the contracts between defendant and KYF.

In sum, although plaintiffs are in a position despite their third party status to maintain a breach of contract claim, the allegations contained in the complaint fail to state any such claim. Defendant's motion will therefore be allowed on this count.

### D. Fraud/Misrepresentation

■ Left remaining among plaintiffs' common law claims is Count Two, which charges that Desai knowingly misrepresented his celibacy, honesty, and status as an authentic guru, and that plaintiffs reasonably relied on these misrepresentations to their detriment. In essence, plaintiffs contend that they were induced by defendant's misrepresentations to devote years of their lives—and in some cases, large sums in personal savings—to Desai and the overall interests of KYF.

■ To prevail on a claim of fraud or misrepresentation, plaintiffs must show that the defendant 1) made a false statement of material fact; 2) with knowledge of its falsity; 3) with intent to induce the plaintiffs to act thereon; and 4) that the plaintiffs in fact relied on the representation to their detriment. *See Macoviak v. Chase Home Mortgage Corp.*, 40 Mass.App.Ct. 755, 760, 667 N.E.2d 900 (1996); *Ravosa v. Zais*, 40 Mass. App.Ct. 47, 52, 661 N.E.2d 111 (1996).

Defendant argues that his alleged misrepresentations did not concern matters of fact—that they were merely promissory in nature, or simple expressions of opinion—and therefore could not form the basis of an action for fraud. If the allegations of the

---

**3.** It should be emphasized that plaintiffs' claim involves contractual terms concerning services to be rendered by Desai directly to the plaintiffs. This feature of the claim distinguishes this case from the law student plaintiffs in *Harvard Law School Coalition for Civil Rights v. President & Fellows of Harvard College*, 413 Mass. 66, 595 N.E.2d 316 (1992), who were held to be mere *incidental* beneficiaries of the nondiscrimination terms implied into employment contracts between the law school and its faculty. The implied contractual terms the law student plaintiffs in *Harvard* were seeking to enforce were meant to protect the faculty employees from discrimination, not to provide the students with a particular law school experience.

complaint are accepted, as they must be at this stage of the litigation, this contention is manifestly untrue. Desai's representations regarding his manner of living—especially his celibacy and lack of interest in material things—concerned verifiable facts regarding his life habits. Furthermore, his representations regarding these habits and attitudes were, under the circumstances, material, in that they were the kinds of representations to which potential disciples such as the plaintiffs would attach importance in distinguishing a "true and authentic guru" from an ordinary layperson, or even an ordinary teacher of yoga.

■ Defendant also contends that plaintiffs' pleadings fail to allege explicitly that defendant perpetrated his falsehoods with the intent of inducing plaintiffs' reliance. However, "where the plaintiff proves a statement made, as of the party's own knowledge, which is false, provided the thing stated is not merely a matter of opinion, estimate, or judgment, but is susceptible of actual knowledge ... it is not necessary to make any further proof of an actual intent to deceive." *Zimmerman v. Kent*, 31 Mass.App.Ct. 72, 77, 575 N.E.2d 70 (1991) (internal quotations omitted). Plaintiffs in this case allege that Desai made false statements regarding his behavior—indeed, regarding the essence of his personality—of which he obviously had actual knowledge. Accepting these allegations as true, the court at this stage will not require plaintiffs to present further proof regarding Desai's intent to deceive to survive a motion to dismiss.

In any event, the complaint, even absent specific wording alleging defendant's intent, depicts that Desai and KYF depended on the virtually free labor provided by the plaintiffs and other resident members of the Kripalu Ashram in order to keep the center operating for outside paying visitors. Compl. ¶¶ 20–21, 25, 27–28. The court may readily infer that it was in Desai's interest to perpetuate his image as an authentic guru in order to retain the plaintiffs' devotion and free labor, continue to attract a steady stream of outside customers, and thereby maintain the benefits that flowed to him from his status.

In short, plaintiffs have offered sufficient allegations from which the court reasonably may infer that Desai made false representations with respect to his status with the intent to induce plaintiffs' reliance, and that plaintiffs in fact relied on defendant's representations, as evidenced by their significant donations of time, labor, and money to the facility.

Finally, plaintiffs' reliance was reasonable under the circumstances, as defendant's representations were neither "preposterous" nor "palpably false." *See Zimmerman*, 31 Mass. App.Ct. at 81, 575 N.E.2d 70. Defendant's motion will be denied on this count.

### E. Violation of Mass.Gen.Laws ch. 93A

■ Finally, plaintiffs allege that Desai engaged in unfair or deceptive trade practices in violation of Mass.Gen.Laws ch. 93A by knowingly deceiving the plaintiffs over the course of two decades, abusing their trust, and enriching himself financially in the process.

Chapter 93A creates two causes of action, one for "persons engaged in trade or commerce," Mass.Gen.Laws ch. 93A, § 11, and another for all other persons, *id.* § 9. While plaintiffs' complaint is not entirely clear, the court assumes that plaintiffs' cause of action is brought pursuant to section 9. *See* Compl. ¶ 56; Pls.' Opp'n at 5 (Docket No. 12).

Section 9 entitles a plaintiff to bring a 93A action where he or she has been injured by another person's use or employment of any method, act or practice declared unlawful by section 2 of the statute.[4] Mass.Gen.Laws ch. 93A, § 9. The acts prohibited by section 2 are "unfair or deceptive acts or practices in the conduct of any trade or commerce." *Id.* § 2.[5] The statutory definition of "trade" and

---

4. While prior to 1979, section 9 required that the plaintiff have suffered a loss of money or property as a result of a purchase or lease, the current version of section 9 requires only that the plaintiff be "injured by another person's use or employment of any method, act or practice declared to be unlawful by section two." Mass.Gen.Laws

ch. 93A, § 2; *Boos v. Abbott Laboratories*, 925 F.Supp. 49, 55 (D.Mass.1996).

5. Plaintiffs' fraud and misrepresentation claim establishes adequate grounds for finding defen-

"commerce" includes the "distribution of any services." *Id.* § 1.

■ The general test of whether a defendant's acts fit the statutory definition of trade or commerce is whether the alleged acts were perpetrated within a "business context," versus a "private, nonprofessional basis." *Lantner v. Carson,* 374 Mass. 606, 610–11, 373 N.E.2d 973 (1978); *see also Billings v. Wilson,* 397 Mass. 614, 615, 493 N.E.2d 187 (1986). Thus, the court must determine preliminarily whether Desai distributed services within a "business context."

While each case requires examination of its own circumstances to determine whether it arose in a business context, *Linkage Corp. v. Trustees of Boston Univ.,* 425 Mass. 1, 24, 679 N.E.2d 191, *cert. denied,* —— U.S. ——, 118 S.Ct. 599, 139 L.Ed.2d 488 (1997), the SJC has established several factors to be considered in making such a determination for purposes of chapter 93A liability. *See Begelfer v. Najarian,* 381 Mass. 177, 409 N.E.2d 167 (1980). *Begelfer* urges courts to assess the nature of the transaction, the character of the parties involved, the activities engaged in by the parties, whether similar transactions have been undertaken in the past, whether the transaction is motivated by business or personal reasons, and whether the participant played an active part in the transaction. *Id.* at 191, 409 N.E.2d 167.

It would appear at first blush that chapter 93A does not govern the sort of "transaction" at issue in this case. According to the complaint, plaintiffs contributed time and energy, and in some instances money and property, in exchange for the opportunity to live in a community that afforded close contact with the defendant and the chance to receive his counseling "services." Presumably then, plaintiffs' donative actions were motivated by purely personal and not economic reasons. Moreover, the nature of the guru/disciple relationship, so far from the world of business, appears anomalous against the back-drop of a statute designed to prohibit "unfair and deceptive trade practices."

■ However, it is the defendant's—not necessarily the plaintiffs'—motivation for the transaction that should guide the court's assessment of whether the acts complained of were committed within a business context. *See, e.g., Planned Parenthood Fed'n of Am., Inc. v. Problem Pregnancy of Worcester, Inc.,* 398 Mass. 480, 493–94, 498 N.E.2d 1044 (1986). In this regard, chapter 93A unquestionably imposes liability on those who seek to gain financially from their unfair practices. *Poznik v. Massachusetts Med. Prof'l Ins. Ass'n,* 417 Mass. 48, 53, 628 N.E.2d 1 (1994).

Observed from this perspective, plaintiffs' allegations, despite their exotic surface, present in essence a garden variety 93A claim. Plaintiffs allege that defendant deliberately misled them with specific misrepresentations, *seeking to profit* from this intentional fraud. By cultivating his public image as an authentic guru, defendant was able to attract dozens, if not hundreds, of resident members to his enterprise to provide cheap labor and allow KYF to operate smoothly for its outside paying customers—thereby directing substantial profits into the pockets of the defendant.[6]

In sum, plaintiffs' allegations present a cognizable claim that defendant was engaged in trade or commerce, specifically, the "distribution of services" via his teachings and unique counseling relationship with the plaintiffs, and that his motivation was, at least in part, if not wholly, economic, as opposed to being strictly personal. In this respect, this case is distinguishable from *Planned Parenthood Fed'n of Am., Inc. v. Problem Pregnancy of Worcester, Inc.,* 398 Mass. 480, 498 N.E.2d 1044 (1986), in which the SJC ruled that "Problem Pregnancy," a non-profit corporation that gave "pregnancy tests, pregnancy counseling advice and other services relative to pregnancy" was *not* engaged in the distribution of services as contemplated

---

dant's acts "deceptive" for purposes of the 93A claim.

**6.** It should be noted that the court does not consider the plaintiffs "employees" of Desai or KYF for purposes of this case. Moreover, this is not the kind of "intra-enterprise dispute" the SJC considers beyond the reach of Chapter 93A. *See Linkage Corp. v. Trustees of Boston Univ.,* 425 Mass. 1, 23 n. 33, 679 N.E.2d 191, *cert. denied,* —— U.S. ——, 118 S.Ct. 599, 139 L.Ed.2d 488 (1997).

by Mass.Gen.Laws ch. 93A, § 1. That ruling hinged on the court's observation that the employees of Problem Pregnancy were motivated by their desire to advocate their pro-life philosophy, and that it appeared that the group did not charge for its pregnancy tests. *Id.* at 493–94, 498 N.E.2d 1044. By contrast, plaintiffs' allegations in this case depict that Amrit Desai was not motivated by a desire to spread his philosophy, and that, in fact, he knowingly misrepresented his "authentic guru" status in order to profit from his contracts with KYF. Moreover, it is clear that resident members (including plaintiffs), as well as visitors, were expected to offer consideration (in the form of labor, time, and money) for the opportunity to receive defendant's "services."

Finally, the complained-of conduct was not an isolated act, but rather, according to plaintiffs, a 20–year pattern of deception in the context of defendant's "business." The scope of defendant's enterprise demonstrates that this was more than just a personal hobby; indeed, Desai was primarily engaged in counseling others as a guru, a practice which he carried on allegedly for profit. *Compare Knight v. Brodnax,* 1994 WL 51635, *3 (D.Mass. Jan.31, 1994).

Given these allegations, the court cannot conclude that there is no set of facts upon which plaintiffs could establish a claim for unfair or deceptive practices under Mass. Gen.Laws ch. 93A, § 9. The court will therefore deny defendant's motion with respect to this count.

### IV. CONCLUSION

In drafting this opinion the court has taken pains to try to be as respectful as possible to all parties, aware that this is a somewhat unusual case. It would be too easy to dismiss the plaintiffs, now that their apparent mistake has been revealed, as excessively ingenuous in their search for an "authentic guru." At the same time, it would be unfair to condemn the defendant as a spiritual flimflam man, when assessing only the sufficiency of the unproved allegations of the complaint. Certain elements of the plaintiffs' claim for damages, such as "disillusionment," "dislocation," and "bewildering and persis-

tent emotional turmoil" seem, at this time, unlikely to survive. In the end, however, discovery, and perhaps trial, will be needed to discern whether plaintiffs were the victims of their own unreflective yearning, or of the deliberate manipulations of a clever swindler.

For the foregoing reasons, defendant's motion is ALLOWED with respect to Counts Three, Four, and Five, and DENIED with respect to Counts One and Two. Thus, remaining in the case are plaintiffs' claims for fraud and misrepresentation, and unfair trade practices under chapter 93A.