*805 OPINION OF THE COURT
George B. Ceresia, Jr., J.
FACTS
Plaintiffs are owners of land near what is known as the Loeffel waste disposal site (Loeffel site) located on Mead Road, four miles northeast of Nassau, Rensselaer County, New York. The Loeffel site is an 11-acre parcel that was operated beginning in 1952. In the 1950’s and 1960’s, defendants General Electric Company (GE), The Bendix Corporation (Bendix), Schenectady Chemicals, Inc. (Schenectady), and others contracted with the Loeffels to pick up industrial wastes and transport them to the Loeffel site where they were deposited. In 1968 the Loeffels ceased disposing of industrial wastes. An on-site lagoon, oil pit, and drum disposal area were covered with soil and a system of drainage channels was constructed to control surface water on the site. These activities were completed in 1974. Defendant Loeffel’s Waste Oil Removal and Service Company reportedly continued to use the site from 1974 to 1980 as a transfer station for waste oils.
In the late 1970’s, the New York State Department of Environmental Conservation (NYSDEC) determined that chemicals had escaped from the Loeffel site and that further remedial action should be undertaken. GE agreed to a consent order to fund a portion of long-term remediation activities at the site. Bendix did the same. Schenectady refused to do so and the State successfully brought suit against Schenectady to compel it to pay its share of remediation costs (see, State of New York v Schenectady Chems., 117 Misc 2d 960, mod 103 AD2d 33 [3d Dept 1984]).
NYSDEC eventually approved and implemented a remedial plan for the Loeffel site. This remediation, which began in September 1983, included the following: (a) removal of the four storage tanks as well as numerous barrels of waste; (b) construction of a below-ground soil-bentonite impermeable containment barrier around the perimeter of the site; (c) placement of an impermeable barrier clay cap with a vegetative cover over the site; and (d) installation of a leachate collection system and surface drainage system. The remediation was completed in November 1984.
Monitoring of groundwater and surface water has been carried out at and near the Loeffel site both before and after the remediation by NYSDEC, the New York State Depart *806 ment of Health (NYSDOH), the Rensselaer County Department of Health (RCDH) and GE. Results of sampling of well water from the properties of plaintiffs Baltzel and Carlson show no detectable concentrations of any contaminants on these plaintiffs’ properties. The remaining four plaintiffs do not have drinking water wells on their property.
Plaintiffs commenced the instant action for damages in July 1987. Their amended complaint, dated October 9, 1991, sets up five causes of action: (a) negligence; (b) nuisance based upon ultrahazardous activity; (c) nuisance based upon intentional acts of defendants; (d) nuisance based upon negligence; (e) trespass. Plaintiffs allege, inter alla, that defendants GE, Bendix and Schenectady caused toxic waste chemicals to be dumped at the Loeffel site; that these toxic wastes are dangerous to human, animal and plant life; that the chemical wastes have migrated and are still migrating onto surrounding properties, including onto plaintiffs’ lands, into plaintiffs’ water and into the air above their lands; that the chemical wastes have contaminated plaintiffs’ properties, causing them to be unsafe, unhealthful and hazardous; that plaintiffs have suffered financial and economic damage; that the notoriety and public awareness of the contamination at the Loeffel site has permanently decreased the value of plaintiffs’ properties.
Defendants move for partial summary judgment dismissing all claims of plaintiffs Witbeck, Baltzel, Carlson, and Casserly.
DISCUSSION
NUISANCE
In Copart Indus. v Consolidated Edison Co. (41 NY2d 564 [1977]) the Court of Appeals reviewed the law with respect to nuisance: "A private nuisance threatens one person or a relatively few (McFarlane v City of Niagara Falls, 247 NY 340, 344), an essential feature being an interference with the use or enjoyment of land (Blessington v McCrory Stores Corp., 198 Misc 291, 299, affd 279 App Div 806, affd 305 NY 140). It is actionable by the individual person or persons whose rights have been disturbed (Restatement, Torts, notes preceding § 822, p 217). A public, or as sometimes termed a common, nuisance is an offense against the State and is subject to abatement or prosecution on application of the proper governmental agency (Restatement, Torts, notes preceding § 822, p 217; see Penal Law § 240.45). It consists of conduct or omis *807 sions which offend, interfere with or cause damage to the public in the exercise of rights common to all (New York Trap Rock Corp. v Town of Clarkston, 299 NY 77, 80), in a manner such as to offend public morals, interfere with use by the public of a public place or endanger or injure the property, health, safety or comfort of a considerable number of persons (Melker v City of New York, 190 NY 481, 488; Restatement, Torts, notes preceding § 822, p 217).” (Copart Indus. v Consolidated Edison Co., supra, at 568.)
"Despite early private nuisance cases, which apparently assumed that the defendant was strictly liable, today it is recognized that one is subject to liability for a private nuisance if his conduct is a legal cause of the invasion of the interest in the private use and enjoyment of land and such invasion is (1) intentional and unreasonable, (2) negligent or reckless, or (3) actionable under the rules governing liability for abnormally dangerous conditions or activities (Restatement, Torts, 2d [Tent Draft No. 16], § 822; Prosser, Torts [4th ed], p 574; 2 NY PJI 653-654; see Spano v Perini Corp., 25 NY2d 11, 15; Kingsland v Erie Co. Agrie. Soc., 298 NY 409, 426-427; Wright v Masonite Corp., 237 F Supp 129, 138, affd 368 F2d 661, cert den 386 US 934).” (Copart Indus. v Consolidated Edison Co., supra, at 569.)
It has been said that discomfort and inconvenience caused by the disturbance of property are valid grounds for recovery in an action for nuisance (see, Dixon v New York Trap Rock Corp., 293 NY 509, 514). However, "To constitute a nuisance, the use must be such as to produce a tangible and appreciable injury to neighboring property, or such as to render its enjoyment specially uncomfortable or inconvenient” (Campbell v Seaman, 63 NY 568, 577). "But not every intrusion will constitute a nuisance.” (Nussbaum v Lacopo, 27 NY2d 311, 315.) The disturbances to plaintiff must not be " 'fanciful, slight or theoretical, but certain and substantial, and must interfere with the physical comfort of the ordinary reasonable person’ ” (Dugway, Ltd. v Fizzinoglia, 166 AD2d 836, 837 [3d Dept 1990]).
The court has examined the depositions of the various parties. There is much testimony with respect to activities formerly carried on by the parties on their respective properties, including gardening, camping, picnicking and hunting, as well as other activities commonly incident to the ownership of land. It is plaintiffs’ testimony that the proximity of the *808 Loeffel site to their property has significantly impeded the use and enjoyment of their lands.[1]
Plaintiffs also place great emphasis on the fact that groundwater monitoring has shown that groundwater in the vicinity of the Loeffel site is contaminated and that the "plume” of contamination is migrating. They point out that pollution of Nassau Lake and the Valatie Kill has resulted in a fish advisory banning the taking of all fish in the Nassau Lake vicinity because of a high concentration of PCBs. Plaintiffs characterize the 1984 encapsulation of the Loeffel site as the creation of a 46,000-ton "bathtub” without bottom, which is actively leaking toxic wastes. Plaintiffs also maintain that their land is subject to imminent and substantial danger of invasion by contaminated groundwater. Further, they contend that their cause of action for nuisance did not accrue until November 1984 when the State finished the encapsulation of the Loeffel site. Prior to that time, plaintiffs were hopeful that defendants would be required to abate the nuisance through physical removal of the contaminated soil. They indicate that the encapsulation created an even more dangerous condition than previously existed, due to the nature of its design and construction.
Plaintiffs concede that there has been no confirmed contamination of their drinking water.[2]
The court has carefully examined the affidavit of plaintiffs’ engineer, John R. Snell, sworn to January 18, 1994. Mr. Snell states that he has reviewed the engineering studies prepared by the State and by GE but does not indicate what facts form the basis of his opinions. Since the affidavit is conclusory, without recitation of factual basis it cannot be considered in support of plaintiffs’ claims.
The court has also examined the affidavit of plaintiffs’ engineer Harvey King, sworn to January 21, 1994. Mr. King draws conclusions as to the migration of contaminated groundwater without specifically indicating the source of his knowledge.[3] This affidavit is also vague and conclusory and of *809 little probative value.
There are few reported cases on point. Adams v Star Enter. (851 F Supp 770 [ED Va 1994]) involved an oil spill which occurred at defendants’ distribution facility. Petroleum products from the spill leached into the groundwater and surface waters and formed an underground plume. Plaintiffs, a group of homeowners, brought action for money damages alleging fear of future contamination and the alleged diminution in property values arising from the fears of the buying public. There was no evidence of groundwater contamination of plaintiffs’ properties, oil odors or any other material interference. The court dismissed the nuisance cause of action on the ground that there was no showing of actual intrusion into the plaintiffs’ use and enjoyment of their lands.
In McGinnis v Tennessee Gas Pipeline Co. (25 F3d 1049 [6th Cir 1994] [published at 1994 US App LEXIS 12781]), plaintiff occupied a home adjacent to an industrial tract which had been contaminated with PCBs. Plaintiff and three nearby property owners filed suit claiming that the release of PCBs had contaminated their land, reduced the value of their properties and caused them severe emotional distress. Plaintiffs’ expert indicated that there was a high probability of contamination of plaintiffs’ land, but that it was undisputed that there was no physical evidence of contamination yet. The court held that under Kentucky law there must be more than a risk of contamination before plaintiffs could prevail in a nuisance action.
In Berry v Armstrong Rubber Co. (989 F2d 822 [5th Cir 1993], cert denied sub nom. Cooper v Armstrong Rubber Co., — US —, 114 S Ct 1067) plaintiff property owners brought an action for damages due to the dumping of hazardous wastes which allegedly occurred from 1937 to 1970. Plaintiffs alleged that the hazardous wastes contaminated their land and groundwater. Their common-law nuisance claims were dismissed because there was no showing that their land or water was contaminated. Plaintiff’s expert testimony indicated that "it was more probable than not” (supra, at 825) that plaintiff’s land was contaminated, but the expert opinions were not based upon tests of water or soil samples from plaintiff’s property but rather from other locations. There was also testimony from a realtor regarding the negative market stigma resulting from the public perception that plaintiff’s properties were contaminated. The court held that in order to support a cause of action in nuisance, plaintiffs needed to *810 present evidence of an "invasion” of their property which they had not done.
"To defeat summary judgment one must lay bare in evidentiary form the evidence on which he relies (Marine Midland Bank v Hall, 74 AD2d 729) * * * 'Bald conclusory assertions, even if believable, are not enough to defeat summary judgment.’ ” (Piccolo v De Carlo, 90 AD2d 609, 610 [3d Dept 1982].)
 In the case at bar, there is no evidence that the land or water of the plaintiffs who are subject to this motion is contaminated by toxic substances. While there is some evidence of the migration of hazardous wastes from the Loeffel site to surrounding lands, the evidence is not probative of injury to plaintiffs’ properties. Nor is there a competent evidentiary showing of an imminent threat of contamination to any of these properties, or even a showing of a high likelihood of future contamination. Without specific evidentiary support, it is mere speculation as to whether or when plaintiffs’ property will ever be affected by the migration of wastes from the Loeffel site. In the court’s view, it was incumbent upon the plaintiffs to produce competent and convincing proof, through qualified experts, demonstrating the immediate effects of property contamination and/or, at the very least, a reasonable probability and expectation of contamination in the future (see, Kinner v Corning, Inc., 190 AD2d 977 [3d Dept 1993]). Thus, plaintiffs’ nuisance claims, insofar as they are based on alleged contamination of plaintiffs’ lands (underground or on the ground) and water, must be dismissed since no issue of fact has been raised, sufficient to defeat defendants’ motion for summary judgment.[4]
The New York Court of Appeals in Jensen v General Elec. Co. (82 NY2d 77 [1993], supra) found CPLR 214-c applicable to a toxic tort cause of action somewhat similar to the one under consideration here. However, Jensen (supra) involved a plume of groundwater contamination that actually infiltrated and polluted plaintiffs’ well water. In that case, the Court found that CPLR 214-c (2) operated as a bar to recovery because plaintiffs had become aware of the groundwater contamina *811 tian more than three years prior to commencement of the action.
Plaintiffs have produced no competent evidence of an “exposure” of their properties to the contaminants emanating from the Loeffel site, either underground or on the ground. Hence, they may not avail themselves of the provisions of CPLR 214-c.
However, plaintiffs also have based their nuisance claims on noxious odors and strong chemical smells emanating from the Loeffel site within the three-year period prior to the commencement of this action. Several of the plaintiffs have testified that the smells and odors associated with the Loeffel site permeated the air over and around their properties prior to the final encapsulation, causing physical discomfort and eye irritation. It appears that the smells may have abated after capping was completed in November 1984. But the instant action was commenced in July of 1987, within three years of completion of the capping of the waste site. The court concludes that plaintiffs have satisfied their burden of showing that a question of fact exists as to whether these noxious odors substantially interfered with plaintiffs’ use and enjoyment of their properties and thus constituted a private nuisance for which damages are recoverable.[5]
It makes no difference that the acts complained of first occurred long ago: “Where, as here, a private continuing nuisance arises out of negligence and is alleged to be recurring, the wrong is not referable exclusively to the day when the original tort was committed (509 Sixth Ave. Corp. v New York City Tr. Auth., 15 NY2d 48, 52). However, damages are recoverable only to the extent that they were sustained during the three years immediately prior to the commencement of the action.” (Kulpa v Stewart’s Ice Cream, 144 AD2d 205, 207.)
The only plaintiffs who did not testify to experiencing noxious smells and odors were John Casserly and Donna Casserly. The court finds that these defendants have not created an issue of fact sufficient to defeat dismissal of a cause of action for private nuisance. The testimony of the other plaintiffs with regard to chemical smells and odors is sufficient *812 to create a question of fact as to the existence of a private nuisance. Damages, however, must be limited to the three-year period prior to commencement of the action (Kulpa v Stewart’s Ice Cream, supra).
In summary, the court finds that there are questions of fact precluding summary judgment with respect to the three causes of action predicated on a theory of private nuisance to the extent that plaintiffs Witbeck, Baltzel and Carlson allege the existence of noxious fumes, smells and odors on their respective properties and damages within three years of commencement of the instant action.
With respect to any cause of action plaintiffs may possess involving public nuisance, the court finds, upon a review of the entire record, that there is a question of fact as to whether the Loeffel site constituted a public nuisance (see also, State of New York v Schenectady Chems., supra, 117 Misc 2d, at 967). This finding, however, does not completely resolve the issue, since an individual may not institute an action for public nuisance as such, except when he or she suffers special damage (Copart Indus, v Consolidated Edison Co., supra, at 568).
The court is guided by decision in Futerfas v Shultis (209 AD2d 761 [1994]), an action to enjoin a violation of a zoning ordinance and to obtain damages based upon nuisance, in which Presiding Judge Cardona stated: "In order to maintain a private action to enjoin a violation of a zoning ordinance and obtain damages, a property owner must establish special damages due to the defendant’s activities * * * The Court of Appeals has stated that ' "[i]n order to establish special damage it is necessary to show that there is some depreciation in the value of the premises as real property arising from * * * the forbidden use” ’ (Allen Avionics v Universal Broadcasting Corp., supra, at 528, quoting Cord Meyer Dev. Co. v Bell Bay Drugs, supra, at 218).” (Futerfas v Shultis, supra, at 762-763 [citations omitted]; see also, Leo v General Elec. Co., 145 AD2d 291, 293-294 [2d Dept 1989].)
Plaintiffs John and Donna Casserly have each testified that they lost a sale of their property because the prospective purchaser learned of the existence of the Loeffel site. This fact would appear to evidence a depreciation in value of plaintiffs’ properties due to the close proximity of the Loeffel site. The court finds that there is an issue of fact with regard to the special damages suffered by all of the plaintiffs, including *813 John and Donna Casserly, sufficient to defeat defendant’s motion for summary judgment with respect to their cause of action for public nuisance.
The court feels compelled to make one further comment in connection with plaintiffs’ causes of action for nuisance. Plaintiffs argue that the completion of encapsulation of the Loeffel site in November of 1984 either created a new cause of action or extended an existing cause of action. It is argued that the encapsulation transformed a temporary problem into a permanent nuisance, inasmuch as prior to encapsulation there was always the possibility that the nuisance would be abated through removal of the toxic chemicals from the Loeffel site. It is the court’s view that the damages alleged are attributed by plaintiffs to the nuisance existing at the Loeffel site. Plaintiffs have not submitted any proof that the encapsulation changed any damages distinct from the nuisance itself. Moreover, while the plaintiffs may have been hoping that the State of New York would require removal of contaminated soil as opposed to encapsulation, the court does not believe that the encapsulation would in any way extend the Statute of Limitations or create a new cause of action as claimed by plaintiffs.
[Portions of opinion omitted for purposes of publication.]

. Plaintiffs Carlson and Baltzel reside on their respective properties. Plaintiffs Casserly and Witbeck reside elsewhere.

. It is not disputed that the drinking water of plaintiffs Isidoro and Gail Marra is contaminated, however, defendants’ motions are not addressed to these plaintiffs.

. The court finds that Engineer King’s reference to unidentified records of groundwater monitoring results is not sufficient to factually support his conclusions.

. This is not to say, however, that under CPLR 214-c and the reasoning of Jensen v General Elec. Co. (82 NY2d 77 [1993]) that plaintiffs may not acquire such a cause of action in the future, when and if the plume of contamination reaches their respective properties (see, Enright v Eli Lilly & Co., 77 NY2d 377).

. The court is mindful of the holding in Jensen v General Elec. Co. (supra) that there is no continuing wrong exception to CPLR 214-c (2). In this instance, the noxious odors emanating from the Loeffel site were patent, not latent, and therefore did not fall within the ambit of CPLR 214-c (2), but rather are actionable in accordance with CPLR 214.