Mary Kathryn **LEWIS, for herself and on behalf of a class of similarly situated property owners, Plaintiff,**

v.

**GENERAL ELECTRIC COMPANY, Defendant.**

**No.  Civ.A. 98–30057–MAP.**

United States District Court, D. Massachusetts.

Feb. 12, 1999.

---

Andrew A. Rainer, Shapiro, Haber & Urmy, Boston, MA, for Mary Kathryn Lewis, for herself and on behalf of a class of similarly situated property owners, plaintiff.

Steven R. Kuney, Williams & Connolly, Washington, DC, for General Electric Co., defendant.

Andrew Latimer, Office of the Attorney General, Environmental Protection Division, Boston, MA, James R. Milkey, Assistant Attorney General, Environmental Protection Agency, Boston, MA, for Massachusetts, Commonwealth of Amicus.

*MEMORANDUM REGARDING DEFENDANT'S MOTION TO DISMISS, PLAINTIFF'S MOTION TO CERTIFY QUESTION TO SJC, AND PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTIVE RELIEF* (Docket Nos. 6,10, 29)

PONSOR, District Judge.

## I. *INTRODUCTION*

Plaintiff, for herself and on behalf of a purported class of similarly situated property owners, has filed suit against defendant seeking compensation for injuries caused by defendant's alleged long-time practice of dumping contaminated soil in the Lakewood section of Pittsfield, Massachusetts. Significantly, plaintiff does not allege that her property has actually been contaminated. Rather, she asserts that because of the presence of PCB contamination in her *neighborhood* and the uncertainty about whether her property may be contaminated, she is unable to sell her home and suffers anxiety about possible risk to her young children, who regularly play in the yard adjoining the home.

Based on these two principal concerns, plaintiff seeks relief under both common law and statutory theories of negligence (Counts I, II, and V), and on theories of strict liability (Count III), intentional infliction of emotional distress (Count IV), and nuisance (Counts VI and VII). Plaintiff also seeks recovery of response costs under federal law (Count VIII). Defendant moves to dismiss all of plaintiff's claims. (Docket No. 6)

Plaintiff further seeks a mandatory preliminary injunction ordering General Electric (GE) to test her property for soil contamination. (Docket No. 29) Finally, she asks this court to certify a question to the Supreme Judicial Court (SJC). (Docket No. 10).

For the reasons set forth below, this court will deny defendant's motion to dismiss the nuisance claims (Counts VI and VII), and allow the motion to dismiss all

other claims (Counts I, II, III, IV, V, and VIII). Dismissal of Count VIII will be without prejudice. This court will further deny plaintiff's motion for injunctive relief, and deny plaintiff's motion to certify a question to the SJC. This case will therefore proceed solely on plaintiff's nuisance claims.

## II. *FACTS*

In reviewing GE's motion to dismiss, the court accepts as true all factual allegations in the complaint and draws all reasonable inferences in favor of Lewis. *See Carparts Distribution Ctr., Inc. v. Automotive Wholesaler's Ass'n*, 37 F.3d 12, 14 (1st Cir.1994). "The motion will be granted only if it is clear that there is no set of facts or theory, consistent with the allegations, upon which [Lewis] can recover." *Chapin v. University of Mass.*, 977 F.Supp. 72, 75 (D.Mass.1997).

As alleged in the complaint, the facts are as follows. From the 1930s until 1976, GE manufactured and serviced electrical transformers at a plant in Pittsfield. The plant used fluid containing polychlorinated biphenyls (PCBs). *See generally Church v. General Elec. Co.*, No. 95–30139, 1997 WL 129381 (D.Mass. March 20, 1997) (providing background on GE's Pittsfield plant and its use of PCBs). PCBs are toxic and may cause cancer in humans. The federal government has banned their manufacture, distribution, and use.

Beginning in the 1940s, GE disposed of soil containing PCBs in the Lakewood section of Pittsfield. This dumping allegedly continued until 1981. According to the complaint, Lakewood residents first became aware of the possible contamination in their neighborhood in 1997.

Lewis, the named plaintiff, lives with her husband and five children in Lakewood. Her young children regularly play in the yard. Several properties within several blocks of her home have been found to contain hazardous levels of PCBs. It is unknown whether her property is contaminated, but plaintiff has been unsuccessful in trying to sell her house, apparently because of concerns over PCB contamination in the neighborhood. Plaintiff alleges that GE has refused to test her property for the presence of PCBs; she further claims that she cannot afford the cost of testing, which she alleges to be approximately $15,000. As a result of GE's actions, plaintiff claims two principal injuries: severe emotional distress stemming in part from concern for her children's health, and decrease in the value of her property.[1]

Lewis seeks to represent a class of property owners in Lakewood, *excluding* those whose properties have actually been found to contain PCBs above a certain level. This limitation apparently aims to minimize the overlap between this class and the class in another lawsuit. She also seeks to represent a subclass of property owners whose properties GE has failed to test for PCBs. The class and subclass both consist of more than 100 people. Class certification is not at issue in the motions at hand.

## III. *DISCUSSION*

### A. *Negligence and Strict Liability*

▮ Plaintiff asserts claims of negligence (Count I), aggravated negligence (Count II), and strict liability (Count III), maintaining that her concern for her children's health has resulted in severe emotional distress and that her "property has suffered a stigma from PCB contamination in the surrounding neighborhood." (Docket No. 1 at 12 & 16–18; Docket No. 9 at 5). As noted, plaintiff does not allege that defendant has actually contaminated her property or harmed her physically through the release of PCBs. These omissions are fatal to Counts I, II, and III.

---

1. In reviewing plaintiff's allegations, this court has considered plaintiff's brief video- taped affidavit (Docket No. 32).

As an initial matter, the portions of plaintiff's claims pertaining to negligent infliction of emotional distress are meritless. "[A] plaintiff may not recover for negligent infliction of emotional distress unless she has suffered physical harm." *Nancy P. v. D'Amato*, 401 Mass. 516, 519, 517 N.E.2d 824 (1988). In this case, plaintiff does not allege that she has suffered physical harm. Thus, the portion of Counts, I, II, and III pertaining to emotional distress will be dismissed.

Turning to the portion of these counts involving diminution of property value, defendant moves to dismiss by invoking the economic loss rule. Under this rule, "purely economic losses are unrecoverable in tort and strict liability actions in the absence of personal injury or property damage." *FMR Corp. v. Boston Edison Co.*, 415 Mass. 393, 395, 613 N.E.2d 902 (1993). Thus, in tort and strict liability actions, "when a defendant interferes with a contract or economic opportunity due to negligence and causes no harm to either the person or property of the plaintiff, the plaintiff may not recover for purely economic losses." *Garweth Corp. v. Boston Edison Co.*, 415 Mass. 303, 305, 613 N.E.2d 92 (1993). Indeed, it is well settled that a defendant is not liable for negligent interference with prospective contractual relations if the alleged harm is pecuniary and does not derive from physical harm. *See* Restatement (Second) of Torts § 766C (1979). Accordingly, under Massachusetts law, courts have rejected negligence claims where economic loss was not associated with physical damage to property. *See, e.g., FMR Corp.*, 415 Mass. at 395, 613 N.E.2d 902; *Stop & Shop Cos. v. Fisher*, 387 Mass. 889, 893–94, 444 N.E.2d 368 (1983).

Because plaintiff has alleged economic loss, but not physical harm to her property, the economic loss rule defeats Counts I, II, and III. Defendant's motion to dismiss these counts will therefore be allowed.

### B. *Mass.Gen.Laws ch. 21E*

Count V alleges that GE is liable for damages to plaintiff under Mass.Gen. Laws ch. 21E. This allegation fails for essentially the same reason as Counts I, II, and III. In enacting Mass.Gen.Laws ch. 21E, "the Legislature did not intend to create a cause of action permitting recovery for economic loss not directly resulting from environmental damage." *Garweth*, 415 Mass. at 307, 613 N.E.2d 92. In the absence of any allegation of physical harm to her property, plaintiff cannot sustain a claim under chapter 21E. Defendant's motion to dismiss Count V will therefore be allowed.

### C. *Intentional or Reckless Infliction of Emotional Distress*

Count IV of plaintiff's complaint alleges that "GE knew or was reckless in not knowing that its actions would inflict emotional distress on the plaintiff and the members of the Class." (Docket No. 1 at 18). The Massachusetts Supreme Judicial Court has established that in bringing a claim for intentional infliction of emotional distress, a plaintiff must show:

> 1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress would result from his conduct; 2) that the conduct was extreme and outrageous beyond all bounds of decency and utterly intolerable in a civilized community; 3) that the defendant's conduct caused the plaintiff's distress; and 4) that the plaintiff's emotional distress was severe.

*Dushkin v. Desai*, 18 F.Supp.2d 117, 121 (D.Mass.1998) (citing *Agis v. Howard Johnson Co.*, 371 Mass. 140, 144–45, 355 N.E.2d 315 (1976)). Physical harm is not an essential element of a claim for intentional or reckless infliction of emotional distress. *See Nancy P.*, 401 Mass. at 520, 517 N.E.2d 824. Nonetheless, "[t]he standard for making a claim of intentional infliction of emotional distress is very high." *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 195 (1st Cir.1996).

It bears repeating once more that plaintiff does not claim that GE contaminated her property. Her claim for intentional infliction of emotional distress must therefore derive from GE's contamination of other properties in the Lakewood section of Pittsfield or from GE's failure to test plaintiff's property for PCBs.

■ No evidence suggests that defendant explicitly intended any of its actions to inflict emotional distress upon plaintiff. Moreover, in this court's view, it cannot reasonably be said that GE knew or should have known that plaintiff's emotional distress would result from its alleged negligent contamination of other properties. Such an argument is simply too attenuated. The focus of cases "dealing with intentional infliction of emotional distress has been on the emotional distress of a person against whom the extreme and outrageous conduct was directed." *Nancy P.,* 401 Mass. at 520, 517 N.E.2d 824. In this case, GE's contamination of other properties plainly was not directed at plaintiff. Thus, insofar as plaintiff's claim rests on defendant's negligent contamination of other property, it founders upon the first element of the examination articulated in *Agis.*

■ Plaintiff also fails to state a claim for intentional or reckless infliction of emotional distress to the extent that she bases such a claim on GE's failure to test her property for PCBs. "Liability [for intentional or reckless infliction of emotional distress] has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts § 46, cmt. d (1965); *Wagenmann v. Adams,* 829 F.2d 196, 214 (1st Cir.1987); *Agis,* 371 Mass. at 145, 355 N.E.2d 315.

Although plaintiff "fears" her property may be contaminated, (Docket No. 1 at 12), her complaint does not allege that GE has actually contaminated her property or even that it is extremely likely that GE has done so. Nor does plaintiff argue that properties immediately adjacent to hers are contaminated or that defendant has violated a statutory duty in refusing to test the property. She merely speculates that her property might be contaminated. Against this backdrop, GE's failure to test plaintiff's property for PCBs simply does not rise to the level of atrociousness or outrageousness described by the case law. Defendant's motion to dismiss Count IV will therefore be allowed.

### D. *Nuisance*

Counts VI and VII allege that defendant has "interfered unreasonably with a common right of the plaintiff and the [two purported classes] to enjoy their property and has created a public and private nuisance." (Docket No. 1 at 19–20).

"There is perhaps no more impenetrable jungle in the entire law than that which surrounds the word 'nuisance.'" W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 86, at 616 (5th ed.1984). As an initial matter, it has been noted that public and private nuisance "have almost nothing in common, except that each causes inconvenience to someone, and it would have been fortunate if they had been called from the beginning by different names." *Id.* at 618; Restatement (Second) of Torts chapter 40, introductory note (1979). Generally, "[a] public nuisance is an unreasonable interference with a right common to the general public," while "[a] private nuisance is a non-trespassory invasion of another's interest in the private use and enjoyment of land." Restatement (Second) of Torts §§ 821B & 821D; *see also Doe v. New Bedford Hous. Auth.,* 417 Mass. 273, 288, 630 N.E.2d 248 (1994) (defining private nuisance); *Planned Parenthood League of Mass., Inc. v. Bell,* 424 Mass. 573, 578 n. 4, 677 N.E.2d 204 (1997) (defining public nuisance). In this case, plaintiff's complaint pleads the two types of nuisance together, though

plaintiff's subsequent pleadings treat them separately.

██ To assert a public nuisance claim, a private plaintiff must show that "the public nuisance has caused the plaintiff some special injury of a direct and substantial character other than that borne by the general public." *Planned Parenthood League of Mass., Inc.,* 424 Mass. at 578, 677 N.E.2d 204. At least one other court has found that the loss of sale of property due to the existence of a polluted site nearby created an issue of fact regarding special damages sufficient to withstand summary judgment on a public nuisance claim. *See Nalley v. General Elec. Co.,* 165 Misc.2d 803, 630 N.Y.S.2d 452, 458 (N.Y.Sup.Ct.1995). Here, plaintiff alleges that GE's contamination of the Lakewood area constitutes an interference with public health and environment and that plaintiff's inability to sell her property represents special injury. (Docket No. 9 at 11). These allegations adequately set forth a claim for public nuisance upon which plaintiff may be able to recover. Therefore, with respect to plaintiff's public nuisance claim, defendant's motion to dismiss will be denied.

██ Plaintiff also alleges a claim under a theory of private nuisance. As a nontrespassory invasion of an interest in land, private nuisance does not require a physical invasion of property. Indeed, a private nuisance "may disturb merely [a plaintiff's] peace of mind, as in the case of a bawdy house, the depressing effect of an undertaking establishment, or the unfounded fear of contagion from a tuberculosis hospital." W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 87, at 620 (5th ed.1984). To assert a claim of private nuisance "requires two different parcels of property: one on which the nuisance condition exists, and another whose occupants are burdened by the nuisance." *Doe v. New Bedford Hous. Auth.,* 417 Mass. 273, 288, 630 N.E.2d 248 (1994).

Review of the relevant case law discloses a split among authorities as to whether a plaintiff whose property is in close proximity to environmental contamination caused by defendant may maintain a nuisance action. Some courts have concluded that such allegations are too speculative to support a private nuisance claim. *See, e.g., Adams. v. Star Enterprise,* 51 F.3d 417, 422 (4th Cir.1995) (holding that plaintiffs' fear that oil spill might spread onto their property and the diminution in property resulting from stigma attached to oil spill failed to make out cause of action in nuisance under Virginia law). Other courts have reached the opposite conclusion. *See e.g., Scheg v. Agway, Inc.,* 229 A.D.2d 963, 645 N.Y.S.2d 687, 688 (1996) (stating that plaintiff's nuisance claim, "insofar as it alleges that the value of [plaintiff's] property was diminished as a result of its proximity to the landfill, does state a cause of action"). One frequently cited opinion notes that "negative publicity resulting in unfounded fear about dangers in the vicinity of the property does not constitute a significant interference with the use and enjoyment of land," sufficient to sustain a nuisance claim. *Adkins v. Thomas Solvent Co.,* 440 Mich. 293, 487 N.W.2d 715, 721 (1992). This case further suggests, however, that a condition created by the defendant causing plaintiff fear that interferes with the use or enjoyment of land might give rise to a nuisance suit. *See id.* at 725.

Here, plaintiff alleges not only the diminution of property value in response to legitimate concerns of contamination, but fear for her children's health and safety. In consideration of the basic tenets of nuisance law requiring merely an interference with use and enjoyment of land, this court concludes that these allegations adequately set forth a theory of private nuisance upon which plaintiff may be able to recover. Defendant's motion to dismiss plaintiff's private nuisance claim will therefore be denied, and Counts VI and VII will remain.

## E. *Recovery of Response Costs*

■ In Count VIII of the complaint, plaintiff seeks to recover response costs under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9607. CERCLA enables a private party who has investigated or remediated a hazardous waste site "consistent with the national contingency plan" to recover response costs. 42 U.S.C. § 9607(a)(4)(B).

To recover costs under this provision, however, a plaintiff must have actually incurred response costs. *See* 42 U.S.C. § 9607(a)(4) (stating that the release must "cause[ ] the incurrence of response costs"); *see generally Dedham Water Co. v. Cumberland Farms Dairy, Inc.,* 889 F.2d 1146, 1157 (1st Cir.1989) (discussing CERCLA requirements).

In this case, plaintiff concedes that she has not incurred such costs. (Docket No. 9 at 15). Plaintiff's claim is therefore premature and fails to state a claim for which relief can be granted at this time. Accordingly, Count VIII will be dismissed without prejudice. If, at a later date, plaintiff does incur response costs, she will be free to reassert this claim.

## F. *Plaintiff's Motion to Certify*

Plaintiff asks this court to certify the following question to the Supreme Judicial Court: does the economic loss rule bar recovery in negligence for stigma damage to property in the absence of physical injury to the property? (Docket No. 10). Because this court concludes, as discussed above in the context of Counts I, II, and III, that the economic loss rule does bar such recovery, plaintiff's motion to certify the question to the Supreme Judicial Court will be denied. *See, e.g., Griffith v. United States,* 858 F.Supp. 278, 283 (D.Mass.1994) (denying motion to certify where "sufficient case law, though perhaps not precisely on point, strongly suggests [the outcome]").

## G. *Injunctive Relief*

■ Finally, plaintiff seeks a mandatory preliminary injunction ordering GE to test her property for the presence of PCBs. (Docket No. 29). A party seeking preliminary injunctive relief in a typical case must prove: "(1) a substantial likelihood of success on the merits; (2) a significant risk of irreparable harm if the injunction is withheld; (3) a favorable balance of hardships; (4) a fit (or at least, a lack of friction) between the injunction and the public interest." *Ralph v. Lucent Techs., Inc.,* 135 F.3d 166, 167 (1st Cir.1998) (citation omitted). "The purpose of a preliminary injunction is to preserve the status quo, freezing an existing situation so as to permit the trial court, upon full adjudication of the case's merits, more effectively to remedy discerned wrongs." *CMM Cable Rep., Inc. v. Ocean Coast Props., Inc.,* 48 F.3d 618, 620 (1st Cir.1995).

Unlike ordinary preliminary injunctions, however, mandatory preliminary injunctions disturb rather than preserve the status quo. Mindful of this distinction, the First Circuit has cautioned that mandatory preliminary injunctions "normally should be granted only in those circumstances when the exigencies of the situation demand such relief." *Massachusetts Coalition of Citizens with Disabilities v. Civil Defense Agency,* 649 F.2d 71, 76 n. 7 (1st Cir.1981). Other courts reflect the First Circuit's disfavor of mandatory injunctions by requiring parties to meet a higher standard than in an ordinary case. *See Phillip v. Fairfield Univ.,* 118 F.3d 131, 133 (2d Cir.1997) (requiring plaintiff to show "clearly that he or she is entitled to relief or that extreme or very serious damage will result from the denial of the injunction"); *United States v. Power Eng'g Co.,* 10 F.Supp.2d 1145, 1148 (D.Colo.1998) ("Because mandatory injunctions are more burdensome than prohibitory injunctions, the plaintiff must demonstrate entitlement to the injunction by compelling evidence."); *Columbia Hosp. for Women Found., Inc. v. Bank of Tokyo–Mitsubishi, Ltd.,* 15

F.Supp.2d 1, 4 (D.D.C.1997) (holding that courts should be "extremely cautious" in issuing mandatory injunctive relief and should "deny such relief unless the facts and law clearly favor the moving party") (internal quotations omitted).

■ The mandatory preliminary injunction sought by plaintiff in this case would disturb the status quo. Indeed, plaintiff's request is particularly unusual because plaintiff asks this court to order GE to incur the cost of investigating plaintiff's case against GE. Normally, of course, a plaintiff bears the cost of determining whether and to what extent she has been injured. In personal injury suits, for example, plaintiffs routinely hire doctors or other experts to determine the nature and cause of their injuries. Such costs are an ordinary part of bringing a lawsuit. To allow plaintiff's motion in this case would be to shift plaintiff's initial investigative costs to the defendant. Given the novelty of plaintiff's request, it is hard to conclude that plaintiff possesses a "substantial likelihood of success" on this claim.

Furthermore, plaintiff fails to point to any comparable case in which a court has ordered mandatory injunctive relief. The principal case upon which plaintiff relies, *Lincoln Properties, Ltd. v. Higgins*, CIV. No. S–91–760, 1993 WL 217429 (E.D.Cal. Jan. 21, 1993), is inapposite. Although the court in that case ordered defendants to investigate and monitor groundwater contamination, *Lincoln Properties* is distinguishable from the case at hand on several grounds.

First, the plaintiff had "established by undisputed evidence" that pollution had in fact leaked from defendants' facilities into the soil and groundwater under plaintiff's property. *Id.* at *15. No such showing has been made in this case. Second, the *Lincoln Properties* defendants were found liable under the Resource Conservation and Recovery Act of 1976, which expressly conferred upon the court the "authority to grant affirmative equitable relief." *Id.* In the case at hand, by contrast, the defen-

dant has not been found liable on any ground and there is no express statutory authorization to order mandatory injunctive relief. Third, the court in *Lincoln Properties* concluded that the affirmative injunctive relief "impose[d] little additional burden" on the defendants given that they were also liable under CERCLA, which required them to "bear a substantial share" of clean-up costs anyway. *See id.* at *16–17. As discussed above, GE is not, at least at this stage, liable for any clean-up costs under CERCLA, and requiring GE to bear plaintiff's investigative costs would impose a significant burden on GE. Finally, the purpose of the investigative efforts in *Lincoln Properties* was different from the purpose of the mandatory injunction plaintiff seeks in this case. Whereas the *Lincoln Properties* defendants were ordered to monitor and investigate contamination in response to undisputed evidence that plaintiff's property had already been injured, plaintiff in the case at hand asks the court to order GE to investigate whether plaintiff has been injured in the first place.

In short, the *Lincoln Properties* court ordered mandatory injunctive relief in an entirely different context. Its holding therefore does not persuade this court that mandatory injunctive relief is warranted under the circumstances of this case.

Plaintiff's motion for mandatory injunctive relief also fails to allege irreparable injury. The aim of plaintiff's motion is to order GE to bear the cost of testing her property for PCBs. Plaintiff justifies this request by arguing that she is "unable herself to pay the approximately $15,000 it would cost to have her property tested," and that testing is "prohibitively expensive." (Docket No. 1 at 12; Docket No. 30 at 10). But in the context of the injunctive relief analysis, "if money damages will fully alleviate harm, then the harm cannot be said to be irreparable." *K–Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 914 (1st Cir.1989). In this case, not only will money damages fully alleviate the harm, they

are precisely what plaintiff seeks. To this end, plaintiff's motion will not succeed.

Although this court is sympathetic to the economic hardship placed on any plaintiff who must bear litigation costs, the "exigencies of the situation" simply do not demand mandatory injunctive relief. *Massachusetts Coalition of Citizens with Disabilities,* 649 F.2d at 76 n. 7. It should be reiterated, however, that under CERCLA, a defendant may be liable to a plaintiff for environmental testing costs after plaintiff has incurred such costs. *See* 42 U.S.C. § 9607. A defendant may even be liable under CERCLA where a plaintiff incurs response costs even though it is eventually determined that defendant did not actually contaminate plaintiff's property. *See Dedham Water Co. v. Cumberland Farms Dairy, Inc.,* 889 F.2d 1146, 1157 (1st Cir. 1989) ("A plaintiff, for example, under certain circumstances might reasonably think that a particular release would prove likely to contaminate his wells and reasonably spend money to avoid the contamination even though no actual contamination occurs."). In other words, the federal statutory framework offers some protection to plaintiffs who incur costs in response to environmental pollutants.

## IV. *CONCLUSION*

Defendant's motion to dismiss plaintiff's complaint is ALLOWED as to Counts I, II, III, IV, and V. It is ALLOWED as to Count VIII without prejudice. It is DENIED as to Counts VI and VII. The case will therefore go forward solely on the question of nuisance. Plaintiff's motion to certify a question to the Supreme Judicial Court is DENIED. Plaintiff's motion for preliminary injunctive relief is DENIED.

A separate order will issue.