BRAINTREE LABORATORIES, INC., Braintree Holdings and Braintree Real Estate Management Company, LLC, Plaintiffs,

v.

CITIGROUP GLOBAL MARKETS, INC., Defendant.

Civil Action No. 09–10601–NMG.

United States District Court, D. Massachusetts.

Nov. 4, 2009.

Opinion Denying Modification or Clarification Dec. 22, 2009.

Barry S. Pollack, Phillip Rakhunov, Joshua L. Solomon, Sullivan & Worcester LLP, Boston, MA, for Plaintiffs.

Brandon L. Bigelow, Robert A. Buhlman, Bingham McCutchen LLP, Boston, MA, Susanna M. Buergel, Charles E. Davidow, Brad S. Karp, Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, NY, for Defendant.

## MEMORANDUM & ORDER

GORTON, District Judge.

Plaintiffs Braintree Laboratories, Inc. ("Braintree Labs"), Braintree Holdings and Braintree Real Estate Management Company, LLC (together, "plaintiffs") bring suit against defendant Citigroup Global Markets Inc. ("CGMI") for violation of federal and state securities laws in connection with the sale of auction-rate securities ("ARS") to plaintiffs.[1] Plaintiffs allege that representatives of defendant made fraudulent statements and omissions and assert claims for 1) rescission and restitution under the Massachusetts Uniform Securities Act, M.G.L. c. 110A, § 410(a), 2) violation of federal securities laws and 3) various common law causes of action. Before the Court are CGMI's motion to stay or to compel arbitration and plaintiffs' motion for provisional remedies.

## I. *Background*

### A. Factual Background

This dispute arises out of the sale of ARS. ARS are debt instruments, typically municipal or corporate bonds and preferred stock, with long-term maturities. Interest rates or dividend yields for ARS are reset through frequent auctions at which the securities are also sold.

Generally, potential customers (buyers of ARS) bid the lowest interest rate or dividend yield that they are willing to accept. The auction then "clears" at the lowest bid sufficient to cover all of the securities for sale and that rate is then applied and paid until the next auction. If the number of bids is insufficient to cover all of the securities for sale, the auction fails and ARS holders cannot resell. Broker-dealers who manage ARS auctions have generally made a practice of intervening to prevent failures but stopped that practice in 2008, leading to a large number of auction failures.

Plaintiffs maintain brokerage accounts with defendant CGMI, a broker-dealer. Through those accounts, plaintiffs bought $41,550,000 in ARS between June and Au-

---

1. Plaintiff has also named Citi Smith Barney as a defendant. CGMI clarifies that Smith Barney is a division of CGMI and Citi Smith Barney is not a judicially cognizable entity.

gust, 2008. At the heart of this case lie plaintiffs' allegations that CGMI misled them when they made those ARS purchases. Specifically, plaintiffs assert 1) that CGMI never identified the securities as ARS, instead referring to them as "seven day rolls" and the equivalent of government-backed money market investments with strong liquidity, 2) that CGMI knew that plaintiffs' primary investment concern was liquidity but sold them ARS anyway and 3) that the illiquid ARS market has prevented plaintiffs from achieving desired liquidity and from selling their ARS. Defendants have not yet filed an answer but respond in their memoranda that plaintiffs knew about the risks of ARS at the time they made the purchases at issue.

## B. Procedural History

On April 16, 2009, Plaintiffs filed their original complaint. Their suit is one of many filed against CGMI and other broker-dealers around the country due to the widespread nature of the ARS market freeze. In an attempt to consolidate those actions, CGMI initiated proceedings before the Judicial Panel on Multidistrict Litigation ("the MDL Panel") to transfer all ARS-related litigation against it to the Southern District of New York. As a part of those efforts, CGMI designated the instant suit as a potential "tag-along" action to an already-transferred case. On October 2, 2009, however, the MDL Panel issued a decision declining to transfer this case because it "raises distinctly different factual and legal questions."

On May 5, 2009, CGMI moved to stay litigation pending the MDL Panel's decision *or* to compel arbitration. Plaintiffs originally opposed the motion in its entirety but withdrew their opposition to the motion to stay after the MDL Panel agreed to consider a transfer. Simultaneously, plaintiffs moved for certain provi-

sional remedies. They seek a preliminary injunction requiring rescission of ARS sales pursuant to M.G.L. c. 110A, § 410(a) or, in the alternative, an attachment of property of CGMI in the amount of $41,550,000. CGMI has opposed that motion.

This Court heard oral argument on the pending motions at a status conference on Friday, October 16, 2009.

## II. *Pending Motions*

### A. *CGMI's Motion to Stay*

In light of the MDL Panel's decision on October 2, 2009, CGMI's motion to stay will be denied as moot.

### B. *CGMI's Motion to Compel Arbitration*

#### 1. Legal Standard

■ The Federal Arbitration Act embodies a "national policy favoring arbitration of claims that parties contract to settle in that manner." *Preston v. Ferrer*, 552 U.S. 346, 128 S.Ct. 978, 983, 169 L.Ed.2d 917 (2008) (citation and quotation marks omitted). The party moving to compel arbitration must show

> that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope.

*InterGen N.V. v. Grina*, 344 F.3d 134, 142 (1st Cir.2003).

#### 2. Application

CGMI moves to compel arbitration under the Account Application and Client Agreement signed by plaintiffs. That agreement states that the signatories agree to arbitrate

> all claims or controversies ... concerning or arising from (i) any account main-

tained ... with [CGMI] ...; (ii) any transaction involving [CGMI] ...; or (iii) the construction, performance or breach of this or any other agreement between [the parties].

■ The crux of plaintiffs' response is that CGMI's arbitration rights have been foreclosed by virtue of a settlement with the SEC ("the SEC Consent Order") and pursuant to a broker-dealer registration form ("Form BD") filed with the Commonwealth of Massachusetts. Their position is untenable. The SEC Consent Order requires CGMI to liquidate the investments of all ARS customers who purchased securities before February 12, 2008. Plaintiffs rely on the following clause:

All customers, including but not limited to Eligible Customers [i.e., pre-February 12, 2008 purchasers] who avail themselves of the relief pursuant to this Consent [i.e., voluntary special arbitration procedures], may pursue any remedies against [CGMI] available under the law.

Plaintiffs contend that 1) as ARS purchasers, they are included under "all customers" even if they are not "Eligible Customers" and 2) the term "any remedies" includes judicial remedies which bestows upon them the right to judicial relief.

Plaintiffs' argument is contrary to the plain meaning of the text of the SEC Consent Order because the provision does not grant new rights or remedies but only reinforces those that are already "available under the law." Plaintiffs' assertion that such a reading renders the provision meaningless surplusage is misplaced. As CGMI points out, without the clause, the SEC Consent Order would remain ambiguous as to whether a customer who elects to accept CGMI's offer to purchase ARS at par could pursue consequential damages in arbitration, in court or in other fora. Moreover, the provision clarifies that the SEC Consent Order does not impact the already-available rights of non-Eligible Customers. Accordingly, the SEC Consent Order does not affect the applicability of the arbitration agreement signed by plaintiffs.

■ Nor does the Form BD, which allows CGMI to sell securities in Massachusetts, alter CGMI's arbitration rights. It merely appoints the Secretary of the Commonwealth as CGMI's agent for receipt of service of process. Plaintiffs mistakenly rely on the following provision to support their argument:

the applicant ... consents that any such action or proceeding against the applicant may be commenced in any court of competent jurisdiction and proper venue within [the state] by service of process upon said appointee ...

That language, however, concerns only service of process and pertains to courts "of competent jurisdiction and proper venue." The assertion that CGMI has "voluntarily surrendered any rights to deny Massachusetts customers a judicial forum" by signing the Form misconstrues any plausible reading of the text. Indeed, the Form itself contemplates the possibility of arbitration, referring elsewhere to "self-regulatory action[s] in connection with broker-dealer activities." The fact that CGMI agrees to comply with Massachusetts law does not mean that related disputes must be adjudicated in court despite a clear agreement to the contrary. Accordingly, the Form BD does not abrogate CGMI's right to arbitration.

Because plaintiffs remaining arguments against arbitration are equally unavailing, the Account Agreement controls. This dispute fits comfortably within its terms and thus CGMI's motion to compel arbitration will be allowed.

## C. *Plaintiffs' Motion for Provisional Remedies*

■ Plaintiffs move for a preliminary injunction ordering rescission of ARS sales or, in the alternative, an attachment of defendants' property to secure a judgment of $41,550,000 plus interest. Their motion is not rendered moot by this Court's allowance of defendant's motion to compel arbitration. *Teradyne, Inc. v. Mostek Corp.*, 797 F.2d 43, 51 (1st Cir.1986) ("[A] district court can grant injunctive relief in an arbitrable dispute pending arbitration . . . .")

### 1. Preliminary Injunction

#### a. Legal Standard

■ A party seeking a preliminary injunction must prove:

(1) the likelihood of success on the merits; (2) the potential for irreparable harm [to the movant] if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest.

*Esso Standard Oil Co. v. Monroig–Zayas*, 445 F.3d 13, 18 (1st Cir.2006).

■ Typically, preliminary injunctions are permissible only "to preserve the status quo." *Bercovitch v. Baldwin School, Inc.*, 133 F.3d 141, 151 (1st Cir. 1998). Mandatory preliminary injunctions, by contrast, "disturb rather than preserve the status quo" by affirmatively mandating action by the non-moving party. *Lewis v. General Elec. Co.*, 37 F.Supp.2d 55, 62 (D.Mass.1999). As a result, the burden is elevated and they "should be granted only in those circumstances when the exigencies of the situation demand such relief." *Mass. Coal. of Citizens with Disabilities v. Civil Defense Agency*, 649 F.2d 71, 76 n. 7 (1st Cir.1981).

#### b. Application

Plaintiffs request a preliminary injunction that would order CGMI to provide the ultimate relief sought, i.e., rescission of the ARS sales pursuant to M.G.L. c. 110A, § 410(a). Their contentions, based primarily on the deposition testimony of a CGMI broker in a related state case, do not satisfy the high burden of proof required for a mandatory preliminary injunction.

■ First, plaintiffs fail to demonstrate a likelihood of success on the merits. They assert that the subject Massachusetts statute requires only proof of material omissions or untrue statements, not scienter or reasonable reliance. Deposition testimony from another case, they add, establishes that the broker working with plaintiffs 1) did not disclose that he was selling ARS and 2) described the securities as highly liquid, both of which statements were untrue and thus actionable under the statute.

CGMI, however, raises two defenses which make it clear that plaintiffs have not shown a likelihood of success. First, there is a significant dispute as to whether the Massachusetts statute even applies to secondary market transactions such as the one at issue here. Second, to recover under M.G.L. c. 110A, § 410(a), a plaintiff must prove that it was unaware of the untruth or omission.

CGMI points to several sources, including plaintiffs' account statements which warn about ARS and demonstrate plaintiffs' history with ARS purchases. Those sources at least cast significant doubt on plaintiffs' contention that they lacked actual knowledge. In light of CGMI's response, the testimony of one broker's dealings with plaintiffs is insufficient to show a

likelihood that they can prove they were unaware of ARS liquidity risks.

■ Furthermore, plaintiffs claim of irreparable harm is unpersuasive. They allege that because they needed liquidity, they will suffer irreparable harm by being denied immediate access to their funds tied up in illiquid ARS. Where an adequate remedy at law is available, however, injunctions are routinely denied. Here, a need for liquidity is not irreparable harm because plaintiffs offer no evidence that CGMI cannot pay damages and thus provide an adequate remedy at law. Prejudgment interest, moreover, compensates for any loss of use of money. *E.g., Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 162–63 (1st Cir.2004).

Accordingly, plaintiffs' motion for a mandatory preliminary injunction will be denied.

### 2. Attachment

■ To obtain an attachment under Massachusetts law, plaintiffs must demonstrate:

1) a reasonable likelihood of success on the merits and 2) a reasonable likelihood of recovering a judgment equal to or greater than the amount of the attachment sought that is 3) over and above any liability insurance shown by the defendant to be available to satisfy the judgment.

*Greenbriar Cos. v. Springfield Terminal Ry.*, 477 F.Supp.2d 314, 317 (D.Mass.2007) (citing Mass. R. Civ. P. 4.1).

■ Although demonstrating a "reasonable" likelihood of success may be less onerous than the standard for a mandatory preliminary injunction, the Court declines to grant an attachment for the same rea-

sons it denied the motion for a preliminary injunction. In particular, deposition testimony of one broker's dealings with some of plaintiffs' employees is not enough to show that plaintiffs, who comprise several corporate entities, lacked knowledge of the alleged untruths or omissions. Sources indicate otherwise and the Court therefore finds that plaintiffs have not shown a reasonable likelihood of success with respect to their motion for an attachment.

### ORDER

In accordance with the foregoing:

1) the defendant's motion to stay or to compel arbitration (Docket No. 17) is, with respect to the motion to compel arbitration, **ALLOWED,** and is, with respect to the motion to stay, **DENIED AS MOOT;** and

2) the plaintiffs' motion for provisional remedies (Docket No. 35) is **DENIED.**

**So ordered.**

### MEMORANDUM & ORDER

Before the Court is plaintiffs' motion for clarification or modification of this Court's November 4, 2009 Memorandum and Order compelling arbitration.

### I. *Background*

Plaintiffs Braintree Laboratories, Inc., Braintree Holdings and Braintree Real Estate Management Company, LLC (together, "plaintiffs") brought suit against defendant Citigroup Global Markets Inc. ("CGMI") for violation of federal and state securities laws in connection with the sale of auction-rate securities ("ARS") to plaintiffs.[1] Plaintiffs allege that representatives of defendant made fraudulent state-

---

**1.** Plaintiffs have also named Citi Smith Barney as a defendant but CGMI has satisfied the Court that Smith Barney is simply a division of CGMI and therefore not a judicially cognizable entity.

ments and omissions and assert claims for 1) rescission and restitution under the Massachusetts Uniform Securities Act, M.G.L. c. 110A, § 410(a), 2) violation of federal securities laws and 3) various common law causes of action.

Plaintiffs maintain brokerage accounts with defendant CGMI, a broker-dealer, through which they bought $41,550,000 in ARS between June and August, 2008. Broadly, plaintiffs have alleged that CGMI misled them when they made those ARS purchases and that, because the ARS market has since become illiquid, they have been deprived of desired liquidity from their ARS investment.

In May and June, 2009, shortly after suit was filed, both parties filed motions for relief. On November 4, 2009, this Court issued a Memorandum and Order allowing CGMI's motion to compel arbitration and denying plaintiffs' motion for a mandatory preliminary injunction ordering rescission of their ARS sales pursuant to M.G.L. c. 110A, § 410(a) ("the November M & O"). On November 18, 2009, plaintiffs filed a motion for clarification or modification of the November M & O to which CGMI filed its opposition on December 2, 2009.

## II. *Analysis*

The arbitration agreement in question states that disputes "shall be determined by arbitration before, and only before, any self-regulatory organization or exchange of which [CGMI] is a member." Following the issuance of the November M & O, CGMI's counsel apparently took the position that under that provision, arbitration should take place before the Financial Industry Regulatory Authority ("FINRA"). It is unclear whether FINRA is the only forum that can be so-described. In any case, plaintiffs would prefer to avoid FINRA and therefore request that this Court 1) permit them to pursue arbitration in a "commercially reasonable forum other than FINRA" or, in the alternative, 2) "order FINRA to consider claims under the Massachusetts Securities Act and effectively resolve those claims".

CGMI responds that 1) because plaintiffs' motion seeks substantive changes to the November M & O, it is actually a motion to reconsider and, as such, fails to meet the requisite standard, 2) plaintiffs have not shown that arbitration before FINRA is unconscionable and 3) there is no authority for this Court to issue a mandatory injunction or order against FINRA.

Notwithstanding the vigorous arguments of plaintiffs, CGMI is correct and the Court will deny the motion. Plaintiffs' requests are further considered in turn.

### A. Allowing Arbitration in a Non-FINRA Forum

As with their motion for a preliminary injunction, plaintiffs limit their argument to one of the thirteen claims brought: rescission pursuant to the Massachusetts Uniform Securities Act, M.G.L. c. 110A, § 410(a). Citing First Circuit authority, they begin with the uncontroversial proposition that where substantive statutory rights are at stake, an alternative forum must protect those rights and allow for their vindication absent an express, knowing waiver of such rights. Then, plaintiffs continue, because FINRA "does not adequately protect and effectively resolve state statutory remedies" in the ARS context and because they have not voluntarily waived such rights, arbitration before FINRA is inappropriate.

To support the contention that FINRA will not protect their statutory rights, plaintiffs make several claims. First, they assert that FINRA explicitly admits in its manual that it is not strictly bound by case

or statutory law. Second, plaintiffs cite a recent FINRA decision in the ARS context ("the *McCutchin* decision") where, according to plaintiffs, the panel ignored a state statute analogous to § 410(a)(2), thereby demonstrating the forum's "routine practice" of ignoring state securities claims. Moreover, plaintiffs contend that this practice is compounded by a bias against ARS-based claims because FINRA owned and sold ARS about six months before the ARS market collapsed. In light of these assertions, plaintiffs maintain that requiring them to proceed before FINRA is equivalent to finding that they have waived their state statutory right to seek rescission and that such a waiver is barred by the text of § 410 and by case law.

CGMI's response is twofold. First, refuting plaintiffs' reference to arbitration before FINRA as "unconscionable", CGMI contends that the agreement should not be set aside as unconscionable because plaintiffs are sophisticated, experienced entities which cannot claim coercion or ignorance of the agreement's terms when it was executed.

Second, CGMI labels as "absurd" plaintiffs' contention that FINRA will not adequately protect their § 410(a) rights and that therefore arbitration before FINRA would amount to an involuntary waiver of those rights. Taking each of plaintiffs' arguments in turn, CGMI responds that, as an initial matter, FINRA has ample experience and expertise with ARS cases and has awarded damages arising out of state statutory claims in the past. Moreover, FINRA's statement that it is not strictly bound by statutory law does not render it an unconscionable forum. CGMI notes that the alternative forum cited by plaintiffs (the American Arbitration Association) has articulated similar principles and that other courts have rejected this very argument. *See Koveleskie v. SBC Capital Markets, Inc.*, 167 F.3d 361, 365 (7th Cir.1999); *Collins v. D.R. Horton, Inc.*, 361 F.Supp.2d 1085, 1098–99 (D.Ariz. 2005). Next, CGMI asserts that plaintiffs' citation to the *McCutchin* decision is unavailing because the arbitrators actually did consider the state statute at issue and, in any event, one decision is not illustrative of a routine policy or practice. Finally, CGMI dismisses as irrelevant plaintiffs' contention that FINRA is a biased panel because its investment fund owned and sold ARS. Because "there is no basis for concluding that a FINRA panel will not consider and adjudicate state statutory claims," therefore, CGMI concludes that plaintiffs' assertion that requiring arbitration before FINRA is effectively a waiver of those claims is also without merit.

CGMI is correct and the Court has little to add. Various premises underlying plaintiffs' motion are unpersuasive but the Court need highlight only one. Specifically, the Court declines to engage in the speculative forecasting necessary to hold that FINRA is sure to ignore plaintiffs' state statutory claim for rescission whenever this dispute finally makes its way to arbitration. Nothing in plaintiffs' memorandum convincingly demonstrates that such a result is certain *ex ante* and CGMI's response casts considerable doubt on the possibility. In any event, the parties here entered into an arbitration agreement the terms of which are clear. When the Court allowed CGMI's motion to compel arbitration under that agreement, it was up to the parties to enter arbitration in accordance with those terms and to submit to "any self-regulatory organization or exchange of which [CGMI] is a member". The Court has nothing to add to this provision and discerns no valid reason to "clarify or modify" its prior ruling to effectuate a different result.

## B. Ordering FINRA to Consider Plaintiffs' State Statutory Claims and to Resolve Them Effectively

In the alternative, plaintiffs ask this Court to require FINRA to apply the Massachusetts Securities Act and to resolve claims under it effectively. Not surprisingly, plaintiffs cite no authority for such a request. Defendant responds that this proposition invites the Court to exceed its authority because, in effect, it seeks a mandatory preliminary injunction imposed against an entity (FINRA) which is not a party to this dispute. Moreover, the scheme envisioned under the Federal Arbitration Act allows for limited judicial review of arbitration decisions *after* an award, not before when facts, arguments and dispositions are unknown.

The Court agrees. Plaintiffs have provided the Court with no authority for their request because, in all likelihood, there is none. *See, e.g., Shearson/Am. Express, Inc. v. McMahon,* 482 U.S. 220, 232, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) ("[W]e have indicated that there is no reason to assume at the outset that arbitrators will not follow the law. . . ."). Accordingly, plaintiffs' motion will be denied.

### ORDER

In accordance with the foregoing, plaintiffs' motion for clarification or modification (Docket No. 54) is **DENIED.**

**So ordered.**